*557
 
 Ruffin, C. J.
 

 In the instructions to the jury, the intentions of the parties and the true character of the transaction, upon which the deed was made to Hoskins, were fairly submitted to them. It must, therefore, be assumed, upon this verdict, that the contract of purchase was made by Oaks for her own benefit, that the sum paid, $700, was her money, and that she was to pay the residue of the purchase money, $550; and that she did not give her own note as a security therefor, but procured her daughter to give her note, with the understanding that Oaks should pay it; and that this was done with the view to conceal the interest of Oaks from her creditors and prevent them from seeking satisfaction of their debts out of the land. We are then to treat this .as a strong case of bad faith, in which clearly the daughter held upon a secret agreement and in confidence for the mother. In such a case, it would be a reproach to any system of jurisprudence, if it provided no means ot reaching the land or the interest of the mother in it, for the payment of her debts. We doubt not but her interest may be made liable for her debts; but the question is, whether it be so liable as to be the subject of sale under
 
 a fieri facias
 
 on a judgment at law, and whether the purchaser at such a sale gets the legal title ? Upon that question, after deliberation, we have come to a conclusion differing from the opinion held by his Honor.
 

 Before the act of 1812, which made trust property subject to legal execution, such an interest as this certainly could not be reached at law. It was the constant practice, both'in England and this country, for a purchaser to take his conveyance to a trustee; and it was allowed, though such conveyance defeated dower, and prevented the redress of creditors at law, and obliged them to sue in a Court of Equity. The act of 1812 altered and corrected that, in cases, in which a person is seized simply and purely for the debtor, without any beneficial interest in the party having the legal title or in any other person except the debtor in execution.
 
 Brown
 
 v.
 
 Graves,
 
 4 Hawks, 342.
 
 Gillis
 
 v.
 
 McKay,
 
 4 Dev. 172. The reason for thus confining the operation of the act is, that it divests the whole legal estate of the trustee, and, therefore, can only extend to a case, in which the trustee does
 
 *558
 
 not; nee¿ that title to subserve the rights of himself or third persous. The act embraces, therefore, onlv the case in r . .1 which the debtor an execution might.call upon the trustee for a conveyance of the legal estate, or, at the least, if there were several equitable joint-tenants for a conveyance of such part of the legal estate, as would be commensurate with his equitable right. The act in no case, gives to the creditor of the
 
 cestui que trust
 
 an interest or power over the estate, legal or equitable, greater than that to which the
 
 cestui que trust
 
 may be entitled. The purchaser holds the land exactly as the debtor held the trust. The act does not, therefore, at all proceed on the idea of a fraud in the creation of the trust; or provide that, by reasoii thereof, the trustee shall be dedeprived of any. interest in himself, derived by the same conveyance. But it is founded on the fact that the debtor, being entitled to the trust, is, in equity and in substance, the owner of the land, and therefore, that it ought to be liable to be sold for his debts. The interest of the debtor, as
 
 cestui que trust,
 
 is the subject of sale and the purchaser can get no more. He therefore is to stand precisely in the shoes of the debtor, except that the debtor would have been obliged to apply to the chancellor to obtain the legal title; whereas the purchaser gets that also by the sheriff’s deed. The question then is, whether, as between the debtor in execution and the person having the legal title, the former could, in the state of the dealings between them, call for an immediate conveyance from the latter? Now we are clearly of opinion, that the daughter would not have been compelled to convey to the mother, without first being discharged
 
 from her note,
 
 given for a part of the purchase money, or, after the money was paid, without its being repaid. If Oaks had given her note and Hoskins had executed it as her surety, the latter would have been entitled to retain the legal title, as a security in the nature of a mortgage. This is the same case in substance. Hoskins gaye her note for Oaks’ debt, and the latter agreed, as she ought, to pay it. But site did not, and the former paid it; and, being for the purchase money of this very land, the title could not be taken from her, without making her whole. As between these parties, that 'cannot
 
 *559
 
 be denied. But it is contended, the bad faith towards the mother’s creditors is an ingredient in the case, which re-* pelsytll claim of the daughter upon the land, as against the creditors, and gives them a higher right than-the mother* Not, we think, under this act of 1812. We have already-endeavored to shew, that the remedy given by it does not stand on the footing of fraud. But another view will render this still clearer. It there was an intention to defraud creditors, then it is asettled principle, that equity will help neither’ party to such a contract; and, consequently, the mother could not have had a decree against the daughter for a conveyance, nor could the creditor of the mother, that is to say, by way of insisting on such a trust and asking its execution,since that would be to affirm and enforce a fraudulent intent* The remedy of the creditor' is founded on a different principle, which is, the right in equity to follow the funds of the' debtor.
 
 Dobson
 
 v. Erwin, 1 Dev. & Bat. 569. When the estate was once in the debtor and has been conveyed by him in trust for himself, the redress- of the creditor is plain at law upon either of two grounds. He may sell the trust, and that will, under the act of 1812, carry the legal estate; or he may treat the conveyance as fraudulent and null
 
 cib initio
 
 under the act of 13th Eliz. (Rev. St.c.50, s. 1,) and therefore as leaving the legal title in the debtor. But this last is invoking another statute which isnot applicable to a case like that before us; which is not of a conveyance by a debtor of land before owned by her, but that of a purchase by the debtor and a conveyance to a trustee for her-. That the statute of Eliz. does not apply, to the case of a purchase by the debtor' is clear from the consideration, that it operates entirely by
 
 making void
 
 the assurances within its purview. In this’ case, that would leave the title in Sheeks, the vendor, which would not serve the plaintiff’s purpose. As has been" already mentioned, however, before the statute 29th Charles 2nd,, from which our act of 1812 is taken, purchases were daily made in England in the name of trustees; and, though equity found means of paying out of the estate the debts of the’ person, who, in the view of that court, was the owner, yet
 
 *560
 
 the purchase and conveyance to the trustee were never deemed within the statute of Elizabeth, so as to subiect theland to a legal judgment and execution. That was the cause of passing the acts to operate at law on the trusts,
 
 qua
 
 trusts. And they have never been construed to give more to the creditor than the debtor could equitably claim, nor to apply to a case in which the debtor could not, immediately and unconditionally claim a conveyance of the legal estate. As Oaks could hot, in this case, have done that, but must have indemnified Hoskins or her husband for the money paid as her surety, in part of thejuirchase money, the case is not within the act of 1812, and the land was not subject tó be sold under execution.
 

 Pee Curiam, Judgment reversed and
 
 venire de novo
 
 awarded.