PeaRSON, C. -J.
 

 1. As to the legal effect of the release. Is the surety, who paid part of the debt entitled to receive the dividend under the deed of trust for his entire indemnity, or is the creditor entitled to receive the dividend, to be applied to the payment of the residue of the debt?
 

 This Court is of opinion that the creditor is entitled to the dividend. The question depends upon the construction of the deed of trust, and this must be arrived at, not merely by a consideration of the words used in the instrument, but of its nature and the purpose for whieh, and the extent to which, the law allows such conveyances to be valid against creditors. The words in which the trust is declared are “to indemnify and save harmless Richard Donnell, Howard Wiswall, c%c., from all loss or damage by reason of their endorsements and suretyship in tire several claims, drafts and notes designated in class number two; and if the fund be not sufficient, then to apply it to indemnify and save harmless the said endorsers and sureties
 
 pro rata.”
 
 Judging by these words, there could be no doubt that the purpose of the debtor was to declare a trust in favor of his sureties and he seems not to have bestowed, even a passing thought upon his
 
 duty
 
 to the
 
 creditors
 
 whose money he had obtained. But the law supplies this want of a proper sense of justice on his part, for it does not tolerate a
 
 *189
 
 volnntaiy conveyance by a debtor as against creditors, and will not allow him to put his property out of their reach by conveying it in trust to provide against some contingent event before the happening of which there is no debt. In the case of a surety it may be he will never pay the original creditor so as to become a creditor himself, for he may be insolvent, or may, in like manner, put away
 
 his
 
 property in trust for a surety and thus the actual creditor will be hindered, delayed and defrauded. So that, in order to make this deed valid, it is essential that the debt of the creditor shall supply the consideration to support it j consequently the creditor must be considered the primary object of the trust, and the indemnity of the surety is secondary, — to follow, as an incident,, the payment of the debt to the creditor out of
 
 the
 
 funds which his debtor has provided. It is only upon this principle that such deeds arc supported by the adjudications of our courts, which are opposed to the English decisions, where such deeds, even those made expressly in favor of creditors, are treated as voluntary. See
 
 Ingram
 
 v.
 
 Kirkpatrick,
 
 6 Ired. Eq. 463. It was decided in
 
 Jackson
 
 v. Hampton, 8 Ired. Rep. 457 “a deed of trust for land which has no consideration, except that the land should be sold for the payment of debts lor which the bar-gainee was bound as suretj of the bargainor, will not operate as a bargain and sale.” This is the rule in a court of La tv, and Equity cannot support such a deed even although a nominal consideration of $1,00 be expressed, in order to pass tire-legal title, unless there be a substantial consideration, which can only be supplied by the creditor, who thereby is made the party entitled to receive the proceeds of the trust fund as we have decided at this term,
 
 Murphy
 
 v. Jackson, ante 11; see also
 
 Ferrer
 
 v. Barret, 4 Jones, Eq. 455. So the plaintiff must be content, in order to prevent the deed from being treated as fraudulent, to take a back seat and be considered secondary to the creditor who supplied the consideration ; which construction is adopted by tiie courts for the purpose of giving effect to the right of a debtor to make a preference among his creditors, provided he does so honestly. In the view we take
 
 *190
 
 of the question, the plaintiff would not be entitled to claim the benefit of the deed of trust unless the release had contained a clause expressly assigning it to him.
 

 2. This Court is of opinion that the creditors are entitled to a dividend of the trust fund according to the amount of the debts, and that no notice can be taken, in making the division, of the subsequent arrangements which any of the creditors have been induced to make in case of the sureties. That is a matter between them, which in no way prejudiced the rights of the parties and in which they can take no benefit. In other words, it is a matter in which they have no concern. Should the dividend received in any instance be so large as to leave an excess after satisfying the debt, by including the amount accepted upon giving the release, the surety .will be ■entitled to such excess as a sum justly applicable to his further indemnity, according to the proper construction of the deed Of trust.
 

 3. The defendants, the Blackwells, are entitled to the fund •arising from the sale of the Steam-boat, which was sold under an agreement of the parties concerned. This conclusion is supported on two grounds : After the boat became the property of Hanks, it was used exclusively for the purposes of inland navigation in the waters of this State. It was, consequently, a North Carolina boat, and not a vessel of the United States, within the operation of the act of Congress passed in pursuance of the power “to regulate commerce with foreign bations and among the several States and with the Indian tribes.” This clause in the Constitution of the United States, it is admitted, by necessary implication, comprehends “navigation also,” and confers a power on Congress to pass an act requiring all vessels, trading with foieign nations, and from State to State, to be recorded in the custom-house; but it does not embrace a vessel or boat going from place to place within any one State, for that is a matter which concerns the State alone as is settled by the case of
 
 Gibbon
 
 v. Ogden, 9 Wheaton’s Rep. 197. So the “Post-boy” was not a vessel of the United States, but a boat of the State of North Carolina
 
 *191
 
 'to which the act of Congress had no more application than the boats plying from "Wilmington to Fayetteville, or from 'Washington to Greenville, or from Edenton to Plymouth.
 

 But it is said Hants, while he was the owner, did register the boat under the name of the “Post-boy” in the customhouse, and it was, by the force and effect of this registration, made a vessel of the United States.
 

 We are unable to see how that consequence follows; It may be that Hanks did so under the expectation that he might, afterwards, send the boat to another State and wished to provide for the contingency, but he, in fact, never did so,- and, of course, the act of registration was a mere matter of supererogation. It is the fact that a boat trades to two or more of the States, or to a foreign country, which makes it a vessel of the United States, and the act of registration in the custom house is an
 
 incident,
 
 necessary to give it the privileges conferred thereby. But so long asit remains in the State and never goes out of its jurisdiction, the law in regard to the transfer and devolution, must depénd upon the laws of the State, for it is strictly a
 
 State right
 
 to make rules and regulations in respect thereto. And so far as registration is concerned, as that was unnecessary while it remained a vessel of North Carolina, it might with as much force be contended, that the fact of registering a bill of sale for a horse would enable the party to read in evidence a copy from the register’s book under the act of Assembly.
 

 But in the second place, we think that the plaintiff is concluded by' the decree in the former suit, which is set up by the answer as a bar. The steam-boat is expressly referred to in the opinion then delivered, and the question suggested how far the plaintiffs could assert the right of a subsequent purchaser under the statute 27 Elizabeth, and the decree embraces it as well as the othey property mortgaged to the Blackwells. To the suggestion that the want of registration in the customhouse was not drawn in issue in that suit, the reply is: it either was, or ought to have been. For if it could not have been drawn in issue in that suit, there is no additional reason why
 
 *192
 
 it can iii this. The object there was to put the mortgage out ot“ the plaintiff’s way, and could have been done as well then as now, upon sufficient ground being shown. There must be an end of litigation.
 

 Per Curiam, Decree accordingly.