J. W. SHERROD et al. v. J. S. DIXON et al.

*Husband and Wife—Mortgage of Wife's Land as Security for Husband's Debt—Principal and Surety—Indemnifying Surety—Trust and Trustee.*

1. The liability of a married woman, who signs a note with her husband and mortgages her land to secure it, is not personal, but is limited to the value of the land so mortgaged.

2. A Court of Equity will not declare one holding the legal title to land to be a trustee for another where there is no allegation of actual or

constructive fraud, or of the violation of some confidential or fiduciary relation existing between the parties.

3. Where a husband bought land with the proceeds of a note secured by mortgage on his wife's land, and caused a legal title to be conveyed to his wife to secure and indemnify her against loss by reason of the mortgage upon her land, a trust in such land so conveyed to the wife will not, in the absence of allegations of fraud, be declared in favor of the creditor (mortgagee) for a deficiency remaining after the foreclosure of the mortgage, except upon a reimbursement to the wife of the price of her land sold under the mortgage.

CIVIL ACTION, heard before *Robinson, J.*, at Fall Term, 1896, of EDGECOMBE Superior Court. The facts appear in the opinion of the Court. There was judgment for the plaintiffs, and defendants appealed.

*Mr. G. M. T. Fountain,* for plaintiffs.
*Messrs. Gilliam & Gilliam* and *Shepherd & Busbee,* for defendants (appellants).

FURCHES, J.: On the 4th day of February, 1888, J. S. Dixon borrowed $2,000 of the plaintiffs, for which he gave them his note due twelve months after date, which note was signed by the defendant, P. L. Dixon, as well as by her husband, the said J. S. Dixon.

At the same time the defendants, J. S. Dixon and wife, made a mortgage to the plaintiffs upon a tract of land belonging to the feme defendant, as further *security* for the $2,000, so borrowed of the plaintiffs by her said husband. With this money the defendant, J. S. Dixon, bought of Mayo, Braswell & Lyon, three undivided interests in a tract of land, being three-fourths thereof, and caused the deed therefor to be made to P. L. Dixon, his wife, with a declaration of trust to secure and save her harmless against any loss she might sustain on account of the suretyship, to-wit, the mortgage she had made to plaintiff as a security for the money he had so borrowed.

SHERROD v. DIXON.

Plaintiffs have foreclosed this mortgage by a sale of the feme defendant's land, which they bought at the price of $1,000, and this sum, less expense of sale, has been applied to plaintiff's debt. To this the defendants make no complaint or objection. But plaintiffs say that, after making this application of the money arising from the mortgage sale of the feme defendant's land, there is still due them from J. S. Dixon, the husband, $1,779.53, and that the land purchased from Mayo, Braswell & Lyon, was conveyed to the feme defendant in trust to indemnify and save her harmless on account of her suretyship and mortgage, and that, this being so, the law implies a trust to plaintiffs or for their benefit, and that the remainder of their debt must be first paid before the feme defendant can have any bene-- fit from the land. This contention of plaintiffs is denied by defendants. And this brings us to a discussion of the law involved in the case.

The legal title to this land was never in J. S. Dixon, the husband. It was bought by the husband and paid for with his money. But by his direction the deed was made to his wife, P. L. Dixon. So we see that neither 13th nor 27th Elizabeth applies, because they make the conveyance void, and this would put the title back in the grantors, Mayo, Braswell & Lyon. *Gowing* v. *Rich*, 23 N. C., 553; *Guthrie* v. *Bacon*, 107 N. C., 337, and many other cases cited in Womack's Digest. Neither was the equitable title in him, as against his wife. But if it was made to the wife without consideration, or for the purpose of defrauding the creditors of the husband, then a court of equity will take hold of it, and appropriate the same to the payment of the husband's debts.

It is not claimed by plaintiffs that they are entitled to have this land subjected to the payment of the balance of their debt, upon the ground of fraud, or for the want of

consideration, by reason of which the title in the feme defendant is void. But they allege in their complaint that these lands have been conveyed to her by the said Mayo and others, without any suggestion of fraud, or want of consideration on her part. And the judge below finds as a fact, upon which he bases his judgment in favor of plaintiffs, that these lands were conveyed to the feme defendant "*in trust* to indemnify her against loss as surety of J. S. Dixon." And in his judgment, ordering the land to be sold for the payment of the balance of plaintiff's debt, the court speaks of it as the land being conveyed to the defendant, P. L. Dixon, *in trust* as aforesaid. The plaintiffs would not be at liberty to treat it as a conveyance, creating a trust estate in the feme defendant, and at the same time treat it as a void conveyance on account of fraud, or for want of valuable consideration. And we will do the plaintiffs the justice to say that they have not attempted to do so, but that they have all the time treated the deed as a valid conveyance and *in trust* to the feme defendant; and that this trust enured to the benefit of the plaintiffs, and the residue of their debt must be paid before the feme defendant can be benefited.

This has relieved us from the discussion of some very interesting questions, that, at first, seemed to be presented, such as the parol declaration of the trust which we thought might be sustained under *Shelton* v. *Shelton*, 58 N. C., 292, and that line of cases. Also, from considering the question of consideration, which it seemed to us might have been sustained under *Potts* v. *Blackwell*, 56 N. C., 449, and *Sutherland* v. *Fremont*, 107 N. C., 565.

It must be admitted that the general rule is that where one is *surety* for the principal debtor, and the surety takes a *security* from the principal debtor, such as a mortgage for the purpose of indemnifying and saving harmless the *surety*,

that this *security* does enure to the benefit of the creditor, whose debt must be paid before the *surety* can have any benefit therefrom.    And if this case falls under this general rule, it must be governed by it.

It is said in *Wiswall* v. *Potts*, 58 N. C., 184, that the reason of this rule is, that the debt due the creditor affords the consideration that supports the mortgage. And another reason that suggests itself to us is, that the surety is bound for the whole debt for which he takes indemnity.    And the payment of the debt discharges the surety from his liability, and he is not discharged until the debt is paid in full. In this way he gets the benefit of the *security:* the surety's liability being coextensive with that of his principal for the whole debt; that when the mortgage is made, it is a dedication of that property to the payment of the debt for which the surety is liable.    This being so, the creditor becomes at once the *cestui que trust*, to the extent of the surety's liability—the entire debt.    This being so, the insolvency of the surety does not affect his obligation to pay, nor does it discharge the debt.    So it is with the statute of limitations, as to the surety.    Because this does not pay the debt, nor does it discharge the surety from his obligation to pay the debt.    The law, after the statutory lapse of time, refuses to give the creditor a legal remedy to collect his debt.    So, it seems to us that neither of these reasons sustains the plaintiffs' contention that they are the beneficiaries of this trust, held by the feme defendant.

Suppose the surety, who is bound for the whole debt, pays off and satisfies the same in full, does all that he contracted to do.    Can it be contended that he would not then be entitled to the benefit of the indemnity?    Certainly not. He is one of the objects of the trust.    It is made for his benefit as well as for that of the original creditor.    But as he was only surety, and his principal would be liable to

him if he paid the debt, the law makes the fund the principal debtor has furnished liable in the first place. If the *securities* had been given to the creditor, and the surety had paid off the debt, he would have become entitled to the securities given to the creditor, to the extent of indemnifying him.

It is admitted that the feme defendant is under no obligation to the plaintiffs for the payment of this debt, on account of her signing the $2,000 note. Her only liability to plaintiffs is created by the mortgage, which is *security*, and not a suretyship. And she is not liable to plaintiffs for anything on account of this mortgage. She has by her deed dedicated that much of her land to the benefit of plaintiffs as a *security* for her husband's debt. That much they have. But they have no obligation on her that she will pay one cent of plaintiff's debt.

Therefore, to free this matter from circumstances that are calculated to confuse the mind, and that have no legal bearing upon the question under consideration, we will take Mrs. Dixon out of this consideration for the present. Then, instead of its being Mrs. Dixon who mortgaged $1,000 worth of her land as a *security* for J. S. Dixon's debt to the plaintiffs, suppose that John Jenkins, a neighbor of J. S. Dixon, had said, "I will not sign your note as surety to the plaintiffs, but I will mortgage a certain tract of my land, worth $1,000, to them as a *security*," and he does so. After this, J. S. Dixon buys a tract of land, and causes the title to be so conveyed to said Jenkins in trust to indemnify him against loss. The plaintiffs' debt is not paid, and Jenkins' land is sold. Can it be, that plaintiffs' could have this land sold and applied to their debt, and Jenkins get nothing? Where is the connection between Jenkins and the plaintiffs? He owes them nothing. He has not agreed to become their trustee, nor has he agreed to take this and hold it in trust for them. There must be

120—9

some continuity, something to connect the trustee and the *cestui que trust*, before there can be a trust.

It being admitted that Mrs. Dixon is the legal owner of this land, and, as we think, the equitable owner to the extent of the price of her land, equity will not declare her a trustee for the plaintiffs who do not claim to have the legal title, and, according to the view we have taken of this case, have no equitable title. Nor have they any specific or equitable lien on this land, as it was not bought with their money, nor was it bought for them. Before a court of equity will declare a party holding the legal title to land a trustee, there must be allegations of fraud, actual or constructive, or some confidential or fiduciary relations existing between the parties, which have been violated.

There is no allegation of fraud in this conveyance, and no proof of any confidential relations between the plaintiffs and the feme defendant, and there can be no trust. The plaintiffs seek to declare Mrs. Dixon their trustee. It cannot be done.

In thus holding, we do not say that plaintiffs are without any remedy. As the land was bought with J. S. Dixon's money, and the deed from said Mayo and others was made to the feme defendant to indemnify her, and as it appears that she has been damaged to the amount (we will say of one thousand dollars), the residue, if any, resulted to J. S. Dixon. This estate would only be equitable, as we have seen from what has already been said. But by a proper reformation of the pleadings in this action (by permission of the court), or by a non-suit in this, as to the lands now sought to be subjected to plaintiff's debt, and a new action, it may be that these lands, so conveyed to Mrs. Dixon, might be sold under an order of the court, and Mrs. Dixon, being first reimbursed, the residue applied to the plaintiffs debt.

Error.

CLARK, J., dissenting: "Where a wife joins her husband in a conveyance of her separate property to secure a debt of the husband, the relation she sustains to the transaction is that of surety." Reade, J., in *Purvis* v. *Carstaphan*, 73 N. C., 575; 24 Am. & Eng. Enc., 720, and numerous cases cited.

"In all cases where the wife executes a mortgage on her property for her husband's debts, or for money loaned to him, it is well settled that she occupies the position of and is entitled to all the rights and privileges of surety for her husband." Kelly Contracts of Married Women, 105; *Hinton* v. *Greenleaf*, 113 N. C., 6; *Smith* v. *B. & L. Asso.*, 119 N. C. 257; Montgomery, J., in *Hedrick* v. *Byerly*, 119 N. C., 420; Brandt on Suretyship, sec. 34, 35 and cases there cited. The only distinction between such suretyship and any other, is that the liability of the wife as surety is restricted to the value of the property mortgaged by her. *Hubbard* v. *Ogden*, 22 Kan., 363. There is no decision in our courts that a married woman cannot be surety for her husband. *Pippen* v. *Wesson*, 74 N. C., 437, merely holds that the bond of a woman, whether as principal debtor or surety, is not binding unless she charges her separate estate with its payment. Any indemnity furnished by the principal to his surety enures to the benefit of the creditor and is a security for his debt (*Morrill* v. *Morrill*, 53 Vt., 74), which he may enforce whether the surety is or is not damnified. Smith, C. J., in *Matthews* v. *Joyce*, 85 N. C., 258, on p. 264, citing Story Equity Jur., sec. 499; *Wiswall* v. *Potts*, 58 N. C., 184; *Bank* v. *Jenkins*, 64 N. C., 719; *Harrison* v. *Styres*, 74 N. C., 290. In *Ijames* v. *Gaither*, 93 N. C., 358, Ashe, J., says: "The principle is so well settled, as not at this day to admit of controversy, that where a mortgage is given by a principal debtor to his surety, to indemnify him as such surety, the creditor

has an equitable claim to the securities, and upon the insolvency of both principal and surety, may have the security subjected to the satisfaction of his debt"— citing Jones on Mortgages, sec. 385 and 387. To same effect, Brandt on Suretyship, sec. 324, 325 and many cases there cited.

The answer of defendants admits that the money borrowed by the husband was invested in the land in controversy, and that the deed therefor first made to him was changed to avoid the expense of another conveyance, and was made to the wife in trust to indemnify her for any contingent loss by reason of her suretyship to her husband, and His Honor finds such to be the fact. The husband was therefore the equitable owner of the land, and it could have been subjected by the plaintiff to the payment of his debt. *Thurber* v. *LaRoque*, 105 N. C., 301. If the plaintiff had proceeded first against such equitable estate of the husband, upon its proving insufficient, he would not have been estopped to proceed against the land mortgaged by the wife as surety. That the plaintiff proceeded first against the land mortgaged by the wife and then against the equitable estate of the husband, in the land paid for by his money, does not increase or affect the rights of the surety in any way. If, upon application to the husband's debt of the property mortgaged by the wife as security, the wife can instantly subtract from liability to the creditor an equal amount of the husband's property which has been conveyed to her in trust to indemnify her, then such suretyship is a mere delusion. Instead of having the additional resource of the property of the wife mortgaged as security for his debt, the creditor has in fact no security but the extent of the husband's property, if an equal amount of the husband's property can thus be relieved of liability to the creditor and turned over to the wife to reimburse her. Such security for debt

adds no more to the amount of property which would have been liable to the claim of the creditor than if no security had been given. Such proceedings resemble nothing so much as Sancho Panza's feast in the island of Barataria, when the fine dishes set before him were whisked away before he could touch them.

There is no distinction between the suretyship of the wife and that of any other person, except that the liability of the wife is restricted to the value of the property mortgaged by her, but there is nothing in that restriction which can alter the long recognized principle that property conveyed by a principal debtor, to indemnify a surety against loss, enures to the benefit of the creditor. The wife might have charged her entire separate estate with the payment of the husband's debt, (*Flaum* v. *Wallace*, 103 N. C., 296,) or, as in this case, the specific property embraced in the mortgage. To the extent of the charge she is surety for her husband, and with the same duties and rights as any other surety.