A. H. McLEOD v. WARREN WILLIAMS and wife.

(Decided May 3, 1898.)

*Motion to Issue Execution on Dormant Judgment—Defenses—Married Woman—Consent Judgment Against Married Woman.*

1. Upon a judgment creditor's motion to revive a dormant judgment and issue execution thereon, the defendant may set up any grounds he has in opposition to the motion.

2. A personal judgment cannot be rendered against a married woman, not a free trader, for her husband's debt.

3. Where a married woman, pending an appeal by her from a personal judgment rendered against her and her husband on notes given for property bought by her husband and secured partly by a mortgage on her land, consented to withdraw the appeal and to allow a compromise judgment to be entered against her and her husband for a certain amount payable in instalments; *Held*, that she had no power to consent to such judgment, and it has no binding force on her although she was personally present and represented by counsel of her own selection at the time of its rendition.

Clark, J., dissents, *arguendo*, in which Montgomery, J., concurs.

Motion for leave to issue execution, on a judgment, heard, on appeal from an order of the Superior Court Clerk directing the issue of such execution, before *McIver, J.*, at Fall Term, 1897, of Robeson Superior Court. At the same time the *feme* defendant moved to set aside the judgment as to her. His Honor affirmed the order of the clerk, and denied the motion to set aside the judgment. The *feme* defendant then appealed.

*Mr. N. A. McLean* for plaintiff.
*Mr. T. A. McNeill* for defendants (appellants).

McLeod *v.* Williams.

Furches, J.: It seems that in 1882, Pope & McLeod sold a steam saw mill, boiler, engine and fixtures to the defendant, Warren Williams, at the price of $3,000, for which sum three notes of $1,000 each seem to have been given; and a mortgage was also made to Pope & McLeod on the tract of land upon which said milling property was to be located, and two other tracts of land, to secure the payment of these notes. It does not appear from the case whether the *feme* defendant signed the notes or not, but she joined in the mortgage with her husband and a part of the land therein conveyed was her land, inherited from her father.

In 1886, the plaintiff, McLeod, having become the sole owner of these notes and mortgage, two of which had not been paid, brought suit against the defendants and recovered judgment by default for $2,000, and a foreclosure of the mortgage. This judgment not being satisfied, at January Term, 1891, the *feme* defendant made a motion to set it aside as to her, which motion was refused, and she appealed to the Supreme Court. At May Term the parties came to an agreement, by which the said defendant was to withdraw her appeal to the Supreme Court and the plaintiff was to take judgment for $2,000, to be paid in five annual instalments of $400 each. The record shows that the judgment of May Term, 1891, was rendered under the following state of facts :

"That at the time the final judgment, which Ann E. Williams asked to have set aside, was taken, she was before the court with her husband, Warren Williams, and she was represented by Messrs. French & Norment, counsel of her own selection, who were also counsel for her husband; that said judgment was taken by agreement of herself and her counsel, as well as by con-

McLeod *v.* Williams.

sent of her husband, and was a compromise judgment, the terms of which were suggested by herself and her husband, and their counsel; that the *feme* defendant owns other separate real estate outside of that included in the mortgage made by Warren Williams and Ann E. Williams to A. H. McLeod."

This judgment of 1891 having become dormant, the plaintiff filed an affidavit and gave notice of a motion to revive it and to have execution on the 29th day of April, 1897.

On the 8th day of May, 1897, the *feme* defendant filed an affidavit alleging the irregularity of the judgment against her, and opposed the plaintiff's motion for execution. This motion was decided against her, and she appealed to the judge, and at once gave notice of a motion to set aside the judgment. The two motions were heard together at Fall Term, 1897, and decided against her, and she appealed. Upon the plaintiff's motion for execution, the defendant had the right to set up any grounds she had why it should not be granted. *McDonald* v. *Dickson*, 85 N. C., 248; *Lytle* v. *Lytle*, 94 N. C., 683.

Under *Green* v. *Ballard*, 116 N. C., 144, this judgment cannot stand as to the *feme* defendant. But it is contended that *Green* v. *Ballard* is not in harmony with *Neville* v. *Pope*, 95 N. C., 346, and *Vick* v. *Pope*, 81 N. C., 22. And it appears to the Court that it is not necessary to decide that question, as there is another upon which it depends; and the court prefers to put its judgment upon that.

It appears that the debt is the husband's debt, and if the *feme* defendant signed the notes (and it does not appear that she did) this created no personal liability on her. *Sherrod* v. *Dixon*, 120 N. C., 60. The judgment

which the *feme* defendant seeks to set aside is a contract judgment, and cannot stand unless the party making the contract had the right to contract. *Bank* v. *Commissioners*, 119 N. C., 214.

The defendant, Ann E. Williams, being a *feme covert* and not a free trader, had no power to contract so as to bind her personally, or her property. *Loan Association* v. *Black*, 119 N. C., 323. The only difference between this obligation and her note or promise to pay is that this is in the form of a judgment under the sanction of the Court, and the promissory note would not be. If the plaintiff had the individual note of the *feme* defendant, and was suing upon it, it could hardly be contended that he could recover against her.

There was error in allowing the plaintiff's motion to renew this judgment as to her, and in refusing to vacate the judgment against the defendant, Ann E. Williams, except as to the foreclosure of the mortgage.

                                                    Error.

CLARK, J., dissenting : This case differs from *Bank* v. *Commissioners*, 119 N. C., 214. There the defendants having no power conferred upon them to create the indebtedness, their consenting to a judgment therefor was *ultra vires* and void. They had no inherent or conferred power to contract the debt, and of course could not do so by a consent judgment. A married woman, on the contrary, has the same inherent power to contract a liability that a married man has, and is only disabled in the instances as to which the law creates a disability, and she is not disabled from submitting to a judgment by any statute or decision. The Constitution was evidently intended to emancipate married women and place them, so far as property rights are concerned, on

a par with men and *femes sole*, for Article X, Section 6, provides "The real and personal property of any female in this State, acquired before marriage, and all property, real and personal, to which she may, after marriage, become in any manner entitled, shall be and remain the sole and separate estate and property of such female." The only instance in which that instrument requires the privy examination of the wife is in the conveyances of the homestead, Article X, Section 8.

In *Pippen* v. *Wesson*, 74 N. C., 437, the Court is advertent to this change and says, "The Legislature may abolish all incapacities of married women, and give them full power to contract as *femes sole.*"  In *Bank* v. *Howell*, 118 N. C., 271, the Court quotes in full the New York statute, which does that very thing, and says that whether the adoption of a similar statute here would not be more in accordance with the literal intent of the Constitution and a remedy for the abuses which abound under the present system is a matter addressed to the legislative judgment. Certainly, after the above cited provisions of the Constitution, there being no inherent or constitutional disability upon married women, we must look solely to the statutory law for such disability as shackles their freedom of action. The only statutory restriction that can be contended for is *The Code*, Section 1826. That this section does not apply to a judgment, but that the wife is bound thereby, is expressly decided in a line of very clearly expressed and able opinions. In *Vick* v. *Pope*, 81 N. C., 22, Smith, C. J., says that where a husband and wife are sued jointly, it is the duty of the husband to set up the wife's disability, and, if he fail to do so, the wife cannot have the judgment against her set aside on the ground of her incompetency to contract. He further says that a judgment against

a married woman appearing in the suit by counsel of her husband's selection is as binding as one against any other person, unless it be obtained by the fraudulent combination of the husband with the adverse litigant. He pertinently adds, "If it were otherwise, how could a valid judgment ever be obtained against a married woman, and how could her liability be tested? If she is disabled from resisting a false claim, how can she prosecute an action for her own benefit, when nothing definite is determined by the result? It is no sufficient answer to say that the defendant's execution of the note with her husband did not bind her. The judgment conclusively establishes the obligation, and such facts must be assumed to exist as warranted its rendition, inasmuch as neither coverture nor any other defence was set up in opposition to defeat it.

As, then, a married woman may sue and, with her husband, be sued on contracts, they and each of them must at the proper time resist the recovery as other defendants, and their failure to do so must be attended with the same consequences."

The opinion cites Taylor, C. J., in *Frazier* v. *Felton*, 8 N. C., 231, and *Greene* v. *Branton*, 16 N. C., 504, in which the elder Ruffin says "Married women are barred by judgments at law as much as other persons with the single exception of judgments allowed by the fraud of the husband in combination with another . . . . She must charge and prove that she was prevented from a fair trial at law, by collusion between her adversary and her husband, preceding or at the trial."

And the late Chief Justice of this court in *Neville* v. *Pope*, 95 N. C., 346, reaffirmed what had been said by the three chief justices above named. In that case a judgment had been taken against a married woman be-

fore a Justice of the Peace and in the action brought to set aside the judgment the plaintiff laid stress upon *Dougherty* v. *Sprinkle*, 88 N. C., 300, in which it had been held that such action could not be maintained, but that ground was overruled, the Court saying, ''It may be that if the plaintiff in this case had made defence, pleaded her coverture, and had appealed from the adverse judgment given against her, she would have been successful; but she did not make defence at all, and as there was judgment against her according to the course of the court it must be treated as conclusive that the cause of action and the facts were such as warranted the judgment.'' In *Grantham* v *Kennedy*, 91 N. C., 148, in an opinion by the same learned judge and citing the same authorities, it was again held: ''Married woman and infants are estopped by judgments, in actions to which they are parties, in the same manner as persons *sui juris*''. A settled and unbroken ruling, thus made by the court for so long a period and forcibly and clearly expressed in opinions delivered by the four eminent judges named, has become a rule of property and can only be shaken for strong and overwhelming reasons. Their very names commanded public reliance on their utterances for

"In Israel's court there sat no Abethden
With hands more clean or more discerning eyes"

than their's. The plaintiff in this very action relied, and took this judgment relying (as he tells us), upon those very decisions. The judgment being valid without, and independent of, her consent cannot be invalidated by her expressing her willingness and assent. It cannot be that the fact that the *feme* defendant was "represented by counsel of her own selection, who were also counsel for her husband, that the judgment was

taken by agreement of herself and counsel, as well as by consent of her husband, and was a compromise judgment, the terms of which were suggested by herself and her husband and their counsel," will enable her to invalidate the judgment when in the cases above cited it was held that she could not do so, though in them she was not present and left it to her husband to employ counsel. In those cases it is recited that the consideration of the notes sued on "enured wholly to the husband's benefit and not to the benefit of the wife or her separate estate, and there was no charge upon her separate property and she was not a free trader." A judgment is binding even upon an infant taken against him when represented by a guardian *ad litem*. *Ward* v. *Lowndes*, 96 N. C., 367, and the husband is at least as much protection to the wife.

The above decisions have never been overruled, the only shadow ever cast upon them being by a passing *obiter* in the late case of *Green* v. *Ballard*, 116 N. C., 144, and, if valid, they sustain the judgment rendered below in this case refusing to set aside the judgment taken against the *feme* defendant and her husband at May Term, 1891, at the rendition of which the *feme* defendant's rights were so well protected, being represented by her husband, several able counsel, and herself taking an active part, and they procuring the benefit of a compromise of a former judgment, by which she was bound by having abandoned her appeal therefrom. *Vick* v. *Pope* and *Neville* v. *Pope*, *supra*, were recognized as authority by Montgomery, J., 116 N. C., 711, subsequent to the *obiter* in *Green* v. *Ballard*, *supra*, and they had been cited in *Patterson* v. *Gooch*, 108 N. C., 503, and in many other cases. *Vick* v. *Pope* was

strongly endorsed by Dillard, J., in *Nicholson* v. *Cox*, 83 N. C., 48, at p. 53.

It must not be lost sight of that the question before us is not as to the proper mode in which a wife should charge her separate estate, but the sacredness of a judgment which is conclusive that she has done so, from which judgment she did not appeal. It must be remembered that the Constitution imposes no restriction whatever upon the power of a married woman to bind her estate by her contracts, and that the statute law (*Code*, Section 1826) requires nothing beyond the written consent of the husband. The decision in *Flaum* v. *Wallace*, which *created* the requirement of a special charge and a privy examination (for the opinion says the question was then presented for the first time) did not assume to invalidate the power of the courts to bind a married woman by a judgment in an action to which she was a party.

The decisions holding that the judgment against a married woman, unappealed from, is binding on her as one *sui juris*, were rendered both before and since the Constitution of 1868, and that Constitution as above stated, reflected the spirit of the age and was liberal, not restraining, in its application to married women. It is not only ungallant, but unjust, to classify married women with "idiots, lunatics and infants", and as being inferior to men and even to single women. If there can be any reason for making such classification as to the execution of deeds and the running of the statute of limitations, it has never existed as to judgments, the conclusive presumption being that in the courts, with husband and counsel to represent them, they have gotten justice, when no appeal is taken.

But it may well be again noted, as often heretofore

decided by this Court, that the retention of such disabilities, even as to conveyances, contracts and limitations, is only statutory and not required by the constitution except that privy examination must be taken as to a conveyance of the homestead and there must be a written consent of the husband to the conveyance by the wife of her property. The retention of the former statutory disabilities upon married women (and their increase, for under the old statute of presumptions—unlike the present statute of limitations—time ran against a married woman as against any one else—*Faggart* v. *Bost*, at this Term) is probably more fruitful of fraud than any other single cause known to the law.

The spectacle of men doing business in their wives' names and casting the responsibility for repudiating their just debts upon their wives is not to be encouraged. The imputed duress and inferiority of a married woman to her husband is purely imaginary and a survival from the time when superiority of brute strength meant duress, for only in physical strength are women as a class inferior to men as a class. While there may be women, though the instances are exceedingly rare, who on a privy evamination will negative their previous assent, there are doubtless fully as many men who, upon a privy examination, might truthfully confess that they were under duress of their wives. In the great number of States where the antiquated system of privy examinations has been abolished, no great evil has resulted. We know that Deborah, who was both wife and mother, was judge over all Israel, and that the two most illustrious sovereigns of England were women. Lord Campbell includes a woman in his list of the Lord Chancellors, and my Lord Coke, in his Commentaries upon Littleton, 326a, tells of another who exercised the functions of

Sheriff in person and sat with the judges on the bench, (the office of Sheriff in England, being of higher dignity than here).   We know that in four States of the Union women are as fully qualified electors as the men, and that, in all the States but twelve, they vote for some purposes; in most of our States and in England, they can hold office; married women are often post masters, sometimes bank presidents and doctors and this Court and (like most others) has licensed women as fit and competent to practice law.   Though the statute is still unrepealed which, as to conveyances and limitations, crowds married women into the same category as ''minors, and those *non compos mentis*,'' there is nothing in the light of the above facts which will justify the courts in extending the rule to render them not bound by a judgment, taken without fraud and not appealed from, when the contrary has been a settled law of the State, recognized by a long line of decisions and acted upon as a rule of property upon which vested rights and titles are now based.

*The Code*, Section 178, expressly authorizes a married woman to sue and be sued, requiring only that her husband be joined with her (except in certain cases).   This contemplates, therefore, that a valid judgment can be given against her.   At common law she could not be sued at all and in equity only when she had specifically charged her separate estate to enforce the charge.   Black on Judgments, Section 188.   Our statute by expressly authorizing her to sue and be sued has changed all that, and some confusion has arisen from not noting the change and in trying to conform to the former equitable proceeding.   This is further shown by *The Code*, 424 (4) which expressly provides that judgment may be given against a married woman, ''in the same manner as

against other persons" and by *The Code,* Section 443, which provides that "an execution may issue against a married woman" to be levied and collected out of "her separate property." The statute does not restrict it to "the property she had charged with the debt." The words "her separate property" evidently mean that an execution against her cannot be collected, as formerly, out of the husband, though he is still a necessary party defendant with her.

It would be a novelty to provide by statute that she can be sued and judgment and execution be awarded against her and then judicially to interpolate that the judgment shall not be binding upon her unless her privy examination is taken. If a judgment is given against her in a case in which she should not be held liable, her remedy is by appeal, otherwise she is bound by the judgment like any one *sui juris,* or like an infant who is represented by a guardian *ad litem.* This has been not only the unbroken law in this State (save the intimation to the contrary in *Green* v. *Ballard,*) but is the uniform rule wherever there is a statute allowing a *feme covert* "to sue and be sued." Indeed it is a necessary consequence of such statute. 10 Am. & Eng. Enc. 89 and cases there cited; *Winter* v. *Council,* 79 Ala., 481; Black on Judgments, Section 192 and numerous cases there cited; 2 Bishop Married Women, Sections 386 and 486.

Montgomery, J.: I concur in the dissenting opinion.