James P. Magill, Executor, v. Brown Bros.

Decided March 15, 1899.

**1. Subrogation of Creditor to Securities of Surety.**

The principal creditor is entitled in equity to the full benefit of security given, for the payment of the debt, by the debtor, to one standing in the situation of a surety.

**2. Same.**

S., having mortgaged property to B., made a second mortgage to M., covenanting with the latter to pay off and release B.'s mortgage, and gave deed of trust on other property to secure the performance of such covenant. Held that B., though unaware of the giving of such deed of trust until later, could, on learning thereof, enforce foreclosure thereof to secure his debt, which the property mortgaged to him was insufficient to meet.

**3. Same—Written Contract—Parol Evidence of Intent.**

Parol evidence by the grantor and grantee in a deed of trust, that it was given and taken to secure the latter against loss of his mortgage security by the enforcement of a prior mortgage on the property, and was not intended to secure the holder of such prior mortgage the payment of his debt, was not admissible to change the effect of such deed of trust.

**4. Same.**

Whether the principal creditor could not enforce such security, though intended by his debtor only as indemnity to the surety, questioned.

**5. Principal and Surety—Subrogation—Acceptance.**

After the principal creditor had accepted the benefit of security given to his debtor's surety by bringing suit to foreclose thereon, such debtor and his surety could not affect his rights by any change in their contract.

**6. Same.**

Testimony of the surety so indemnified that he had not intended to enforce the security given him by sale for payment of the mortgage debt against which he was to be secured thereby, was not admissible to affect the right of the principal creditor to such security.

**7. Surety Defined.**

Surety, in its broadest sense, includes every person whose estate is obligated to answer the default of another.

**8. Same.**

One who is not a surety, in the sense of having become bound to pay his principal's debt, but who, having taken a mortgage upon property previously incumbered, has received security from his mortgagor for the performance of the latter's covenant to discharge such incumbrance, occupies the position of a surety for the payment of the prior mortgage, in such sense as will entitle the first mortgagee to enforce for his debt the security so given the second.

**9. Certifying Question.**
It is not the policy of the Court of Civil Appeals to certify questions where a direct appeal to the Supreme Court is available by application for writ of error.

APPEAL from Travis. Tried below before Hon. F. G. MORRIS.

*John W. Parker,* for appellant.

*T. W. Gregory* and *D. W. Doom,* for appellees.

KEY, ASSOCIATE JUSTICE.—Appellees, Brown Bros., instituted this suit on the 21st day of December, 1896, against D. H. and J. W. Snyder and others, including the appellant, in which they sought to recover upon the $13,000 note referred to in the agreed statement, and to foreclose their mortgage lien upon the Coke County land and the Williamson County land, referred to in the agreed statement.

Appellant answered January 4, 1897, and denied the right of appellees to a foreclosure of any lien upon the Williamson County land. The defendant Hirshfeld set up certain rights which were protected by the judgment and are not involved in this appeal.

The court below rendered judgment for the appellees, establishing their debt against the Snyders and foreclosing the mortgage liens on both the Coke County and Williamson County land. Magill has appealed, and the parties have made an agreed case, resting upon the following facts:

"1. On December 26, 1893, D. H. & J. W. Snyder, by D. H. Snyder, D. H. Snyder, and J. W. Snyder, for a valuable consideration by them received, made, executed, and delivered to J. Gordon Brown their certain joint and several promissory note of that date for $13,000, due on November 1, 1896, bearing interest from November 1, 1893, at the rate of 10 per cent per annum, payable semi-annually, with 10 per cent additional for attorney's fees in the event of suit,—which note was given in renewal and extension of a note for the same amount in favor of the same party, dated November 2, 1887, and due November 1, 1890, on which interest had been paid to November 1, 1893,—and then and there secured the said note by a deed of trust, made, executed, and delivered by them to R. L. Brown, trustee, on certain lands in Coke County, in this State, which will be hereinafter referred to as the 'Coke County lands.'

"2. On June 6, 1894, the said Snyders, each joined by his wife, made, executed, and delivered to James P. Magill, as executor of the last wills of Thomas Huddleston and Lurana Huddleston, deceased, their certain deed, conveying the Coke County lands, which is as follows (omitting the description of the lands):

" '*The State of Texas, Williamson County.*—Know all men by these presents that we, D. H. Snyder, joined herein by his wife Mary, and J. W. Snyder, joined herein by his wife C. J. Snyder, of the county and State aforesaid, for and in consideration of the cancellation and surren-

der to us by James P. Magill, of said county, as executor of the last wills of Thomas and Lurana Huddleston, late of said county, deceased, of the three certain promissory notes, dated August 1, 1888, for ten thousand six hundred and forty-nine and 3/100 ($10,649.03) dollars each, due in one, two, and three years after date, bearing 10 per cent interest per annum, drawn by D. H. and J. W. Snyder, the grantors herein, Thomas S. Snyder and J. D. Wulfjen, in favor of the said Thomas Huddleston, the principal and interest, after deducting credits on said notes at this time being about forty thousand ($40,000) dollars the said note maturing twelve months after date having been renewed by a written obligation executed in favor of the said Magill as executor of said wills, which is also here delivered, the receipt whereof is hereby acknowledged, have granted, sold, and conveyed, and by these presents do grant, sell, and convey to the said James P. Magill as executor of the wills of the said deceased, the following described real estate.   *   *   *   Together with all and singular the rights, members, hereditaments, and appurtenances to the same in any manner belonging or appertaining.

" 'To have and to hold all and singular the premises above described unto the said James P. Magill, as executor of the wills of the said Thomas Huddleston, deceased, and Lurana Huddleston, deceased, his heirs or assigns forever,  And we do by these presents bind ourselves, our heirs, executors, and administrators, to warrant and forever defend all and singular, the said premises unto the said James P. Magill, as executor of said wills, against the claim or claims of any and all persons whomsoever claiming or to claim the same or any part thereof.  And we covenant to release said premises from a deed of trust held thereon in favor of Brown Brothers, of Austin, Texas, to secure our note for $13,000, dated November 1, 1893, and to indemnify him to the extent of the consideration paid for said land in case the same shall be sold under said deed of trust.

" 'Witness our hands at Georgetown, Texas, this 6th day of June, 1894.

" 'D. H. SNYDER,
" 'MARY SNYDER,
" 'J. W. SNYDER,
" 'C. J. SNYDER.'

"On said June 6, 1894, the said Snyders, each joined by his wife, made, executed, and delivered to said Magill as executor of said wills the following deed of trust on about eight hundred acres of land known as the 'Old D. H. Snyder Place,' near Round Rock, in Williamson County, to wit:

" '*The State of Texas, Williamson County.*—Know all men by these presents that we, D. H. Snyder, joined herein by his wife Mary, and J. W. Snyder, joined herein by his wife C. J. Snyder, of the county and State aforesaid, for and in consideration of the sum of ten dollars to us cash in hand paid by James P. Magill, of said county, the receipt whereof is hereby acknowledged, and for the purposes and uses hereinafter set forth, have granted, sold, and conveyed, and by these presents do grant,

sell, and convey unto the said James P. Magill, in trust, and to his successors, all that certain parcel of land situated near the town of Round Rock in said county of Williamson, and being the same land described in the deed of conveyance from me and my said wife and J. W. Snyder to Lewis Cook recorded in volume 60, pages 298-303, of deed records of said Williamson County, to which deed and the record thereof reference is here made for metes and bounds and a more particular description. Together with all and singular the rights, members, hereditaments, and appurtenances to the same in any manner belonging or appertaining.

" 'To have and to hold all and singular the said premises unto the said James P. Magill his heirs, or assigns forever. And we do by these presents bind ourselves, our heirs, executors, and administrators to warrant and forever defend all and singular the said property unto the said James P. Magill against the claim or claims of any and all persons whomsoever claiming or to claim the same or any part thereof.

" 'This conveyance, however, is intended as a trust for this, that, whereas by deed of even date herewith, the grantors herein conveyed unto the grantee herein in his capacity of executor of the wills of Thomas Huddleston and Lurana Huddleston, late of Williamson County, deceased, certain lands situated on the Colorado River, in Coke County, Texas, fully described in said deed, on which Brown Bros., of Austin, Texas, hold a deed of trust to secure a promissory note dated the 1st day of November, 1893, for thirteen thousand ($13,000) dollars, due on the 1st day of November, 1898, and drawn by D. H. and J. W. Snyder.

" 'And whereas, it was agreed by us when we executed the said deed that we would keep the interest on the said note fully paid up, and that we would pay off and satisfy the said note according to its tenor and effect on or before the maturity thereof, which was a material inducement to the said Magill to take the said land.

" 'Now, if we shall keep the interest on the said debt due said Brown Bros. fully paid up as it becomes due, and shall also keep all taxes paid on said land herein conveyed, and shall pay off and satisfy the said note according to its tenor and effect at the maturity of the same, then this conveyance shall become null and void and shall be released at our cost and expense; but in case of failure or default on our part to keep the interest on said debt fully paid up as it becomes due, or to keep the taxes on said premises paid, or to pay the said note at the maturity of the same according to its tenor and effect, then in such event, the said James P. Magill or his successors in office as executor of the said wills, is by these presents fully authorized and empowered, at any time after default in the payment of said interest or taxes or after default in the payment of said note after the same becomes due, to sell the said above described premises herein conveyed, to the highest bidder for cash in hand, at the courthouse door in Williamson County, on the first Tuesday in any month, between the hours of 10 a. m. and 4 p. m., after first publicly advertising the time, place, and terms of said sale, as is required by law in judicial sales, and after said sale as aforesaid, to make to the purchaser or purchasers thereof

a good and sufficient deed in law to the premises so sold, with the usual covenants and warrants, and to receive the proceeds of said sale and to apply the same to the payment (1) of a commission of 5 per cent to the trustee making the sale, (2) any interest in arrears on said debt, (3) of any taxes that may be owing on the same, (4) the principal and interest of said indebtedness, and (5) of any incumbrance on said premises that may be superior in right to the lien herein given, whether the same shall then be due or not, holding any remainder subject to our order; or should the said Magill or his successor have been discharged as executor of said wills or have become deceased, then the devisees or the survivors of them shall have the power to appoint a substitute in writing who shall have the same powers as are delegated to the said James P. Magill, and we do by these presents fully and absolutely ratify and confirm any and all acts which the said James P. Magill or his substitute as herein provided may do in the premises by virtue hereof.

" 'It is further agreed by us that the said Magill shall be and he is hereby authorized to collect all rents and profits hereafter arising from the use of the land herein conveyed, and we hereby assign unto him such rents and profits to be used by him in paying, as far as the same will go, the interest on said indebtedness of thirteen thousand ($13,000) dollars of Brown Brothers, except the rents and profits arising from said place during the present year.

" 'The premises herein conveyed are incumbered by a vendor's lien note for thirty-one hundred and fifty ($3150) dollars, drawn in our favor by Lewis Cook in part consideration for the conveyance to him of the land herein described, which is now held by Henry Hirshfeld as collateral to secure the payment of a note for three thousand ($3000) dollars, principal drawn by us in his favor; we having bought back the said premises at foreclosure sale on certain notes given by said Cook to us, also in part consideration for said premises; and we agree to pay off and satisfy the said Hirshfeld note against us and to procure the said land to be released from the vendor's lien reserved to secure the said note held by him as collateral, on or before September 1, 1894, and failure on our part to cause the said land to be released from the said vendor's lien by or before that time shall authorize the trustee herein to proceed at once to enforce this deed of trust according to the power of sale given and to apply the proceeds to the payment of said Hirshfeld note, using any balance of the proceeds to pay off the said Brown Brothers indebtedness, the interest thereon, the taxes, and the commission in the order as hereinbefore provided.

" 'Witness our hands at Georgetown, Texas, this June 6th, A. D. 1894.

" 'D. H. SNYDER,
" 'MARY SNYDER,
" 'J. W. SNYDER,
" 'C. J. SNYDER.'

"On said June 6, 1894, Thomas S. Snyder made, executed, and delivered to the said Magill, as executor of said wills, the following instrument:

" '*The State of Texas, Williamson County.*—This instrument witnesseth, that whereas D. H. Snyder, joined by his wife, and J. W. Snyder, joined by his wife, of Williamson County, have this day conveyed to James P. Magill of same county, as executor of the last wills of Thomas Huddleston and Lurana Huddleston, late of said county, deceased, certain lands in Mitchell and Coke counties, in this State, in part payment of the three certain promissory note for ten thousand six hundred and forty-nine and 3/100 ($10,649.03) dollars each, of date August 1, 1888, due in one, two, and three years, bearing 10 per cent interest per annum, and drawn in favor of the said Thomas Huddleston by the said D. H. and J. W. Snyder, Thomas S. Snyder, and J. D. Wulfjen, the said note maturing twelve months after date having been renewed by a written obligation executed by said parties in favor of the said Magill as such executor, the principal and interest of said notes, after deducting credits, amounting to about forty thousand ($40,000) dollars; and whereas the said lands in Coke County are incumbered by a deed of trust in favor of Brown Brothers, of Austin, Texas, to secure a note drawn by the said D. H. Snyder and J. W. Snyder in their favor of date the ————, 18——, for thirteen thousand dollars ($13,000), due on the ———— day of ————, 18——, which said note the said D. H. and J. W. Snyder agreed to pay off and satisfy, so as to release the lien reserved on said land by said deed of trust to secure the payment of the same, which deed of trust is of record in the records of Coke County, and to which reference is here made for a better description of the said debt and lien.

" 'And whereas the said D. H. and J. W. Snyder, for the purpose of securing and making good their promise to pay off and satisfy the said Brown Brothers' note, and to release and discharge the said land from a deed of trust given by them to secure the same, executed a deed of trust of even date to James P. Magill, of said county, on certain land situated near the town of Round Rock, in said Williamson County, and being the same described in a deed of conveyance from them to Lewis Cook, recorded in volume 60, pages 298-303, of deed records of said Williamson County, to which said deed of trust and to the said Cook deed, and the record thereof as aforesaid, reference is here made for a particular description of said land; and whereas the said land on which the said deed of trust was given, that is, the land described in the said Cook deed, is now incumbered by a vendor's lien note for the sum of thirty-one hundred and fifty ($3150) dollars, drawn by him in favor of the said D. H. Snyder and J. W. Snyder, and now held by Henry Hirshfeld, of Austin, as collateral to secure the payment of a note for three thousand ($3000) drawn in his favor by the said D. H. and J. W. Snyder; and whereas I am a joint maker with the said D. H. and J. W. Snyder and J. D. Wulf-

jen of the three promissory notes in favor of the said Thomas Huddleston, as aforesaid,

" 'Now, therefore, know all men by these presents, that I, the said Thomas S. Snyder, in consideration of the acceptance by the said James P. Magill, as executor of the said wills of Thomas and Lurana Huddleston, of the conveyance of the lands aforesaid in full settlement of the said notes on which I am jointly liable as aforesaid, have agreed and do hereby agree that in case the said D. H. and J. W. Snyder shall fail to pay their said note to Henry Hirshfeld, which is secured by collateral note, as aforesaid, on or before September 1, 1894, that I will pay the same; and I further agree to pay off and satisfy the said note and the interest which shall accrue, owing by them to Brown Brothers and secured by a deed of trust lien on the land conveyed by them to the said Magill as aforesaid, in case they shall make default in the payment thereof; and I bind myself, my heirs, executors, and administrators to reimburse the said Magill as such executor of the estates which he represents for any amount which he or the said estates may pay on account of taxes on the said land described in the said Cook deed, or on account of the said Hirshfeld debt, in order to protect the said land against the lien of the vendor's lien note held by him as collateral as aforesaid, or on account of the indebtedness owing to Brown Brothers to protect the said land in Coke County conveyed by them to said Magill as aforesaid against the deed of trust held thereon by the said Brown Brothers. It being the intention of this instrument to bind me, the said T. S. Snyder, for the payment of only such portion of the above named indebtedness as may remain unpaid after sale of the land mentioned in said deed of trust executed by D. H. and J. W. Snyder and wives to J. P. Magill, Ex.

" 'Witness our hands at Georgetown, Texas, this 6th day of June, A. D. 1894.

" 'Thos. S. Snyder.'

"The three foregoing instruments were executed at the same time and as parts of the same transaction.

"3. The said D. H. Snyder and J. W. Snyder testified that they did not intend by making and delivering the deed of trust to Magill on the 800 acres in Williamson County to further secure Brown Brothers' debt,—the one sued on herein; and the said Magill testified that by accepting said deed of trust he did not intend that it should further secure Brown Brothers' debt,—all three testifying that it was their intention that the said deed of trust should operate to secure the said Magill in the rights acquired by him under the deed conveying to him the Coke County lands, copied above.

"Brown Brothers objected to all said testimony on the ground that parol evidence was not admissible to vary or contradict the clearly expressed intention of the instrument appearing on its face, on the ground that said testimony did vary and contradict the clearly expressed purpose of the parties appearing in the deed of trust from the Snyders to

Magill to additionally secure Brown Brothers' debt, and because said testimony was immaterial and irrelevant. The court overruled said objections and admitted the testimony; to which action Brown Brothers excepted and reserved their bill of exceptions, which was allowed and is a part of the record. The court, however, as shown by his statement made in allowing the bill, did not consider the testimony in arriving at his conclusion.

"4. R: L. Brown, one of the plaintiffs, testified that Brown Brothers were not consulted regarding the execution of the deed of trust on the 800 acres in Williamson County, and did not learn of its existence until a few days before the institution of this suit; that upon learning of the existence of the same, they determined to claim the same as additional security for the payment of their debt, and manifested such determination by filing this suit to foreclose same, on December 21, 1896, as well as the deed of trust on the Coke County lands, and in doing so, had no knowledge of the nature of the transaction of date June 6, 1894, between the Snyders and Magill, except what was derived from a certified copy of the deed of trust of that date.

"5. On February 22, 1897, J. W. Snyder and D. H. Snyder, by J. W. Snyder, his agent and attorney in fact, made, executed, and delivered to said Magill, as executor of said wills, the following instrument:

" 'The State of Texas, Williamson County.—This contract in writing, this day made and entered into by and between D. H. Snyder, acting herein by his agent and attorney in fact, J. W. Snyder, who is hereunto duly authorized in writing, and J. W. Snyder, acting for himself, and D. H. Snyder & J. W. Snyder, a copartnership composed of said D. H. Snyder and J. W. Snyder, acting herein by the said J. W. Snyder, parties of the first part, and James P. Magill, acting herein in his capacity of independent executor of the last will of Thomas Huddleston, deceased, and in his capacity of independent executor of the last will of Lurana Huddleston, deceased, party of the second part, all of Williamson County, in the State of Texas, witnesseth:

" 'That whereas, on to wit, June 6, 1894, the said D. H. and J. W. Snyder, as individuals and as a copartnership, were jointly and severally indebted to Brown Brothers in the sum of thirteen thousand ($13,000) dollars, said indebtedness being the same as that sued upon by the said Brown Brothers in their suit against D. H. and J. W. Snyder et al. in the District Court of Williamson County, filed in said court on December 21, 1896, and numbered on the docket of said court 3365, and to the petition filed by Brown Brothers in said suit, reference is here made for particular description of said indebtedness, and the said indebtedness so described is the indebtedness herein referred to, whether Brown Brothers were the payees of the debt named or not, at the time named, and which will be referred to hereinafter as the Brown Brothers' indebtedness, and which said indebtedness was secured by deed of trust or deeds of trust on the land hereinafter mentioned, situated in Coke County, and which

said deed of trust or deeds of trust are described in the said Brown Brothers' petition; and

" 'Whereas, the said D. H. Snyder and J. W. Snyder were on the said date indebted to the estates of which the said Magill is executor for principal and interest in the sum of forty odd thousand dollars, evidenced by three notes for ten thousand six hundred and forty-nine and 3/100 ($10,649.03) dollars each, dated August 1, 1888, which indebtedness will be hereinafter referred to as the Huddleston indebtedness; and

" 'Whereas, thereafter on the said date, the said D. H. and J. W. Snyder, owing the said Brown Brothers indebtedness, secured by lien as aforesaid and the said Huddleston indebtedness, conveyed unto James P. Magill, in his capacity of executor of said wills, together with other property, 8654½ acres of land, situated at that time in Coke County, and which previous to formation of Coke County was situated in Tom Green County, in the State of Texas, and being the same land on which the said Brown Brothers' indebtedness was secured by deed or deeds of trust, as aforesaid, in full satisfaction of the said Huddleston indebtedness, the said D. H. and J. W. Snyder expressly covenanting in the said deed of conveyance to release the said land from the Brown Brothers' lien, and to indemnify the said Magill to the extent of the consideration paid for said land, in case the same should be sold to satisfy the said Brown Brothers' indebtedness, which said deed of conveyance is recorded in volume 5, pages 223-228, of deed records of Coke County, and to which reference is here made for more particular description of said land; and

" 'Whereas, at the same time of the execution and delivery of the said deed of conveyance to the said Magill, as executor, the said D. H. and J. W. Snyder, joined by their wives, executed, acknowledged, and delivered to the said Magill their certain deed of trust on a certain tract of land situated near the town of Round Rock, in said Williamson County, and referred to a deed of conveyance from D. H. Snyder and wife and J. W. Snyder to Lewis Cook, recorded in volume 60, pages 298-303, deed records of said Williamson County, and the record thereof, for metes and and bounds and more particular description of said land; the purpose of said deed of trust being to protect the said Magill, as far as the security would do it, against the said Brown Brothers' indebtedness; and he was given the power in said deed of trust to sell the said land, which will be hereinafter referred to as the D. H. Snyder place, and pay off a vendor's lien note for thirty-one hundred and fifty ($3150) dollars, which was held by H. Hirshfeld as collateral to secure a note for three thousand ($3000) dollars, and with the balance to pay off the Brown Brothers indebtedness, which said deed of trust is recorded in book 12, pages 149-155, deed of trust records of Williamson County, and to which reference is here made for more particular description of the said land and of the trusts and powers therein given; and

" 'Whereas, at the same time T. S. Snyder, who was a surety on the said Huddleston indebtedness, and entered into an agrement in writing with the said Magill, as executor, binding himself to reimburse the said

Magill for any amount which he should be compelled to discharge the Coke County lands from the Brown Brothers' lien, after exhausting the old D. H. Snyder place; and

" 'Whereas, the said D. H. Snyder and J. W. Snyder have not complied with their covenant to release the said Coke County lands from the Brown Brothers' lien, and are not able to do it at this time; and

" 'Whereas, it was not the purpose or intent of the said D. H. Snyder and J. W. Snyder, or of the said Magill, to further secure the said Brown Brothers' indebtedness by the execution and delivery of the deed of trust to said Magill on the old D. H. Snyder place; and

" 'Whereas, it is now desired by the said D. H. Snyder and J. W. Snyder and the said James P. Magill to so change the said deed of trust on the said old D. H. Snyder place as to give the said Magill the option, after one year from this date, to sell the old D. H. Snyder place under the power therein given, and if at that time an actual breach of the covenant of the said Snyders to release the Coke County lands from the Brown Brothers' lien has happened, by sale of said lands to satisfy the Brown Brothers' indebtedness, to apply the proceeds on the liability which the said Snyders will in that case be under to Magill, as executor, which liability is hereby fixed and liquidated at twenty-five thousand ($25,000) dollars; or if an actual breach of the said covenant has not then happened, to claim a breach of said covenant, and apply the proceeds upon the liability of the said Snyders as for an actual breach, which is fixed and liquidated as aforesaid; and the balance remaining of the twenty-five thousand dollars we promise to pay to the said Magill, as executor, at Georgetown, in Williamson County, Texas, with interest at 10 per cent per annum.

" 'Now, in view of the premises, it is agreed between the parties hereto that the said James P. Magill, as executor aforesaid, after one year from the date hereof, may sell the old D. H. Snyder place, pursuant to the power of sale given in the deed of trust thereon to him, and if a breach of the covenant made by the said D. H. Snyder and J. W. Snyder in the deed of conveyance from them to him, whereby they agreed to release the lands therein described from the lien thereon securing the Brown Brothers' lien, has then happened, and he so elects, he may apply the proceeds of said sale in satisfaction of the liability resulting from such breach, which is fixed as above at twenty-five thousand dollars; or if a breach has not actually happened, he may claim one and apply the proceeds in satisfaction of the liability of the said Snyders as for an actual breach, which is fixed, as above, at twenty-five thousand dollars; and the balance of the proceeds, if any, he shall turn over to the said Snyders or their order.

" 'It is also agreed that if the said Magill shall not elect to apply the proceeds of the old D. H. Snyder place on the Brown Brothers' indebtedness, that the said T. S. Snyder shall be released from his obligation to the said Magill; but if the said Magill shall elect to apply said proceeds

on said indebtedness, then this instrument is not to be considered as in any manner affecting the liability of said T. S. Snyder on said obligation.

     " 'Witness our hands, this the 22d day of February, A. D. 1897.

              " 'J. W. SNYDER,

              " 'D. H. SNYDER,

                " 'By J. W. Snyder, his agent and attorney in fact.

              " 'D. H. and J. W. SNYDER,

                " 'By J. W. Snyder.

    " 'I hereby give my consent to the foregoing instrument.

                       " 'JAMES P. MAGILL, Executor.'

"Brown Brothers objected to the introduction of said instrument, because it was executed after this suit was brought, could not affect the rights of plaintiffs which had vested in them, because it could not vary or defeat the terms of the deed of trust of date June 6, 1894, and because it was immaterial and irrelevant. The court overruled said objections and admitted the instrument; to which action Brown Brothers excepted and reserved their bill of exceptions, which was allowed and is a part of the record. The court, however, as shown by his statement made in allowing the bill, did not consider the instrument in arriving at his conclusion.

"6. The value of the old D. H. Snyder place,—800 acres in Williamson County,—is wholly inadequate to satisfy the $25,000 indebtedness to Magill mentioned in the instrument of February 22, 1897, last copied above; and the Coke County lands are now worth less than the debt of Brown Brothers.

"7. Said Magill also testified that he, as executor of the said Huddleston estates, had not intended, since the execution of the deed of trust to him on the old D. H. Snyder place, at any time, to sell the said place and apply the proceeds on Brown Brothers' debt, pursuant to the power therein given him, and that he does not intend to do so.

"Brown Brothers objected to the introduction of this testimony on the ground that parol evidence was not admissible to vary or contradict the clearly expressed intention of the instrument appearing on its face, on the ground that said testimony did vary and contradict the clearly expressed purpose of the parties appearing in the deed of trust from the Snyders to Magill to additionally secure Brown Brothers' debt, and on the further ground that said testimony was immaterial and irrelevant. The court overruled said objections and admitted the testimony; to which action Brown Brothers excepted and reserved their bill of exceptions, which was allowed and is a part of the record. The court, however, in his statement made in allowing the bill, stated that he did not consider the testimony in reaching his conclusion.

"It is agreed that the judgment of the court below shall be affirmed, so far as it awards Brown Brothers a recovery of their debt, with foreclosure of the deed of trust on the Coke County lands, and in so far as it awards a recovery to Henry Hirshfeld, as chairman of the endowment committee of B. B.

"The following are the issues of law to be determined by the court on the following statement of facts:

"1. Was the evidence of Snyder and Magill of their intention in making the deed of trust on the 800 acres of land admissible as against the objections interposed by Brown Brothers? And if so, should it have been considered by the court in reaching his conclusion?

"2. Was the instrument of date February 22, 1897, admissible in evidence as against the objections interposed by Brown Brothers? And if so, should the same have been considered by the court in reaching his conclusion?

"3. Was the testimony of Magill, that he had not intended and did not intend to execute the power of sale given him in the deed of trust on the 800 acres, admissible as against the objections interposed by Brown Brothers? And if so, should the court have considered the same in reaching his conclusion?

"4. Are Brown Brothers (plaintiffs in the court below and appellees here) entitled to a foreclosure of the deed of trust from the Snyders to Magill on the 800 acres in Williamson County, as additional security for the payment of their debt, as against the rights of Magill, executor, under the instrument of date February 22, 1897?"

*Opinion.*—The questions embraced in the first, second, and third issues of law, as stated above, are answered in the negative; and the one embraced in the fourth is answered in the affirmative.

After Magill, as the representative of the Huddleston estate, purchased the Coke County lands, which were incumbered by mortgage to secure the debt owing to appellees, the Huddlestone estate, to the extent of the Coke County lands, occupied the position of surety for the debt owing by the Snyders to appellees. Wofford v. Unger, 55 Texas, 483. Therefore the trust deed on the Williamson County land, of date June 6, 1894, must be treated as security furnished by the principal debtor for the protection of the surety; and such being the case, considering its terms, it would seem clear that appellees have the right to enforce it in satisfaction of their debt. On this subject, a standard author announces the law in these words:

"As a general rule, where a surety, or a person standing in the situation of a surety, for the payment of a debt, receives a security for his indemnity, and to discharge such indebtedness, the principal creditor is in equity entitled to the full benefit of that security, and it makes no difference that such principal creditor did not act upon the credit of such security in the first instance, or even know of its existence. 'The authorities place the principle upon the ground that as the security is a trust created for the better securing of the debt, it attaches to it, and hence it is that it may be made available by the creditor, although unknown to him.' The right of the creditor is the same when the security is a mortgage or other lien given the surety by the principal after the principal

and surety have both become bound, even though there may have been no previous agreement that indemnity should be given. To entitle the creditor to enforce this right in equity, it is not necessary that he should have exhausted his remedies at law or have reduced his debt to judgment." Brandt on Sur. and Guar., sec. 324.

The author supports these proposition by numerous authorities that are cited, and they are upheld by others that are not cited. Morrill v. Morrill, 53 Vt., 75; Cooper v. Middleton, 94 N. C., 86; Mfg. Co. v. Powell, 78 Texas, 53; Bank of Bellville v. Wheeler, 12 Texas Civ. App., 489; same case on second appeal, 41 S. W. Rep., 376. And some authorities hold that when security is given merely for the purpose of indemnifying the surety, the creditor, upon maturity of his debt, is entitled to the benefit of such security, whether the surety has been damnified or not, and irrespective of the question whether the surety or principal, either or both, are solvent. Morrill v. Morrill, 53 Vt., 75, and cases there cited.

There are other authorities that hold that when the mortgage or other security is given for the purpose of indemnity only, the creditor can only reach such security by way of subrogation, after the surety has been damnified; and others, perhaps, that make the right of the creditor to enforce the security depend upon the insolvency of the principal debtor and the surety. But however this may be, there appears to be practical unanimity of authority upon the proposition that when the principal debtor has provided a fund in the hands or subject to the control of the surety for the payment of the debt, whether such fund be provided by mortgage on real or personal property, or by pledge of bonds, notes, or other character of security, the creditor can claim the benefit of such contract, foreclose the lien thereby created, and have the property applied to the payment of his debt. Property thus placed under the control of the surety is impressed with a trust in favor of the creditor, for, as said by the Supreme Court of the United States (in Hampton v. Phipps, 108 U. S., 264): "When a debtor, who has given personal guaranties for the performance of his obligation, has further secured it by a pledge in the hands of his creditor, or an indemnity in those of his surety, it is conformable to the presumed intent of all the parties to the arrangement that the fund so appropriated shall be administered as a trust for all the purposes which a payment of the debt will accomplish; and a court of equity, accordingly, will give to it this effect. All this, it is to be observed, as the rule verbally requires, presupposes that the fund specially pledged and sought to be primarily applied is the property of the debtor, primarily liable for the payment of the debt; and it is because it is so that equity impresses upon it the trust, which requires that it shall be appropriated to the satisfaction of the creditor, the exoneration of the surety, and the discharge of the debtor. The implication is, that a pledge made expressly to one is in trust for another, because the relation between the parties is such that that construction of the transaction best effectuates the express purpose for which it was made."

Applying this doctrine to the case in hand, it seems clear that the

proper judgment was rendered in the court below.   By clear, unambiguous, and apt language, the trust deed executed by the Snyders in favor of Magill, as the representative of the Huddleston estate, on June 6, 1894, creates a trust for the double purpose of discharging whatever incumbrances might exist upon the Coke County lands and preventing loss to the Huddleston estate.   This instrument in express terms authorizes the sale of the Williamson County land for the purpose, among others, of paying appellees' debt and discharging the mortgage on the Coke County lands.   This as effectually made the Williamson County land a trust fund for the payment of appellees' debt, as would have been the case if the Snyders had delivered to Magill, as the representative of the Huddleston estate, a chattel or any other character of property upon an agreement that, in case of failure by the Snyders to pay the debt, the property so delivered should be sold and the proceeds applied to its payment.   That it was the intention to fix a lien upon the Williamson County land for the purpose of raising a fund to discharge the mortgage on the Coke County lands is not only manifest from the terms of the trust deed, but the instrument executed at the same time by Thomas S. Snyder concludes with the explanatory statement: "It being the intention of this instrument to bind me, the said T. S. Snyder, for the payment of only such portion of the above named indebtedness as may remain unpaid after the sale of the land mentioned in said deed of trust executed by D. H. and J. W. Snyder and wives to J. P. Magill, Ex." The indebtedness referred to in this instrument includes the mortgage debt on the Coke County lands, and the quotation given shows that it was the intention of the parties that the Williamson County land should be sold and the proceeds applied to the payment of said debt.

The purpose to provide a fund for the payment of appellees' debt being clearly shown by the certain and unambiguous terms of the trust deed executed June 6, 1894, parol evidence was not admissible to show that the intention of the parties was otherwise; and such being one of the purposes for which the instrument was executed, appellees have the right to have the trust thereby created for their benefit enforced. Furthermore, it is not clear to the mind of the writer that if the instrument referred to had been intended as an indemnity only, appellees would not be entitled to have it enforced in their behalf.

In the Bellville Bank case, cited above, Wheeler, the debtor, had executed a mortgage on 5000 head of cattle to protect certain persons who were sureties for his debts, one of which was owing to the bank.   The mortgage did not in express terms authorize any one to apply the property to the payment of Wheeler's debts, but was conditioned that, if he should pay off and discharge the indebtedness referred to and keep harmless the sureties named, the conveyance should be null and void; but should the sureties or either of them sustain damage or loss by reason of their suretyship, the mortgage was to remain in full force and effect.   It was charged in the petition that Wheeler and the sureties on the bank's debt had become insolvent, and that some of the property covered by the

mortgage had been delivered to the sureties for whose benefit it had been executed.

Under these circumstances, this court held that the bank had an equitable lien on the property covered by the mortgage and delivered to the sureties. This proposition was strenuously resisted, and the ruling of this court was assigned as error in an application to the Supreme Court for a writ of error, which application was refused. 43 S. W. Rep., 16.

In the present case it is not expressly stated that the Snyders are insolvent, but it is stated in the contract between them and appellant, executed February 22, 1897, that they have not complied with their covenant to release the Coke County land from appellees' lien, "and are not able to do it at this time." And it is also agreed that the Coke County lands, which occupy the attitude of surety for appellees' debt are worth less than the debt.

These facts point to equitable reasons why appellees should be subrogated to the rights of appellant in reference to the Williamson County land, even if the contract could be construed as one of indemnity only.

But, as before said, the contract clearly discloses a purpose to provide a fund for the payment of the debt; and such being the case, the property referred to is impressed with a trust in favor of the creditor, regardless of the solvency or insolvency of the Snyders and regardless of the value of the Coke County lands.

February 22, 1897, when the second instrument was executed by the Snyders to Magill, seeking to change the terms and effect of the mortgage executed June 6, 1894, this suit was pending, and Magill had filed his answer therein. The action of Brown Bros. in filing this suit and giving notice to appellant thereof, must be treated as an acceptance and adoption of the mortgage executed by the Snyders June 6, 1894; and whatever may have been the rights of the Snyders and Magill to change the terms of the contract prior to such acceptance by Brown Bros., they could not thereafter, without the latter's consent, so change it as to affect their rights. Gifford v. Corrigan, 6 Law. Rep. Ann., 610 (N. Y.)

We have examined all the authorities cited in appellant's brief, and do not regard any of them as controverting the principles announced in this opinion or their application to the facts of this case. They present different conditions and circumstances from those disclosed by the present record. No reversible error has been pointed out, and the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

#### Delivered April 19, 1899.

We have duly considered appellant's motion for a rehearing, and conclude that it should not be granted. Some of the points in the motion will be briefly noticed.

1. It is claimed that this court fell into error in holding that the Huddleston estate, to the extent of the Coke County lands, occupied the

attitude of surety for the debt owing by the Snyders to appellees. Technically speaking, the relation of surety may not have existed, because neither Huddleston, nor the representative of his estate, had signed a written obligation to pay the debt owing by the Snyders; but the term "surety," in its broadest sense, includes every person whose estate is obligated to answer for the default of another. Watriss v. Pierce, 32 N. H., 560. And it may also be true, as contended by counsel for appellant, that, as to Brown Bros., the creditors of the Snyders, the Huddleston estate and the Coke County lands do not occupy the relation of surety, and that the lands remained bound like a principal obligor; nevertheless, the relation of principal and surety may exist as between co-obligors, while as between them and the obligee, they may all be bound as principals. 1 Brant on Sur. and Guar., sec. 38; 24 Am. and Eng. Enc. of Law, 723; Crafts v. Mott, 4 N. Y., 604; Hatch v. Norris, 36 Me., 419; Owen v. McGehee, 61 Ala., 440: Wadsworth v. Lyon, 93 N. Y., 201; Bank v. Clare, 76 Texas, 47.

On this subject, Wadsworth v. Lyon, supra, is quite similar to the case in hand. In that case the owner of lands which were mortgaged, having sold the same and received the full consideration therefor, and the purchaser not having agreed to discharge the mortgage, it was held, as between the mortgagor and the purchaser, that the latter was a surety for the debt secured by the mortgage. So in this case and in this sense, the Huddleston estate, to the extent of its interest in the Coke County lands, occupied the relation of surety for the debt owing by the Snyders to Brown Bros.; and it is not necessary to decide whether or not they occupied such relation as against the rights of the latter.

In fact, it may be conceded that as to Brown Bros. the Coke County lands remained liable as a principal, but as the Huddleston estate received no part of the consideration for the debt owing by the Snyders to Brown Bros., and as the Coke County lands, which that estate now owns, are mortgaged to secure that debt, the estate, as between it and the Snyders, must be regarded as a surety. This being the case, and the Snyders having created a fund and placed it at the disposal of the representative of the Huddleston estate, for the purpose of discharging the mortgage on the Coke County lands, Brown Bros., the creditors, have the same rights in reference to this fund as they would have if the Coke County lands were bound to them as a surety only.

2. Appellant requests us to find, as a conclusion of fact, from the testimony of the Snyders and Magill, received but not considered by the court below, that it was not the intention of the Snyders and Magill in making the deed of trust to further secure Brown Bros.' debt.

We hold that if the excluded testimony referred to was admissible, the case should be reversed and remanded for another trial. The testimony referred to, considered by itself and without reference to the contents of the deed of trust, shows that it was not the intention of the Snyders and Magill, in making said instrument to further secure appellees' debt;

but this testimony is in conflict with the clear and positive terms of the deed of trust, and if admitted, the question of intention to benefit Brown Bros. would be a question of fact concerning which there would be conflict in the testimony; and as the court below made no finding on this subject, this court would not be authorized to do so. We hold, however, that the oral testimony referred to is not admissible, because it contradicts the plain terms of the trust deed.

3. Appellant requests us to certify the controlling questions in this case to the Supreme Court. It is not the policy of this court to certify questions to the Supreme Court when the disposition here made of the case leaves a way open for a direct appeal to the latter court. This court having affirmed the judgment of the District Court, direct appeal to the Supreme court is available by writ of error, and the request to certify will not be granted.

*Motion overruled.*

Writ of error refused.