### FIDELITY & DEPOSIT CO. OF MARYLAND v. COLBY et al.

(Supreme Court, Appellate Division, Fourth Department. December 6, 1911.)

BANKS AND BANKING (§ 263*)—DEPOSITORS—AGENCY.

A national bank bookkeeper induced defendants to deposit funds in the bank, and from time to time received money outside the bank to be deposited for them, but so manipulated accounts as to enable him to appropriate the money to his own use; checks against the deposits being charged against other depositors. On discovery of the bookkeeper's defalcations, his surety paid the bank the shortage and took an assignment of the bank's claim against defendants, arising through the overdraft resulting from charging their checks against their account. The national bank act (Rev. St. U. S. § 5190 [U. S. Comp. St. 1901, p. 3486]) requires a national bank to transact its business at the place specified in the organization certificate. *Held* that, as affecting defendants' liability to the surety, the bookkeeper must be deemed to have been defendants' agent, and not the bank's.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 263.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Erie County.

Action by the Fidelity & Deposit Company of Maryland against Huron Colby and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Frederick Haller, for appellants.
Roland Crangle, for respondent.

SPRING, J. The defendants, who are copartners, kept an account with the Commercial Bank of Buffalo at the solicitation of one Johnson, an employé of the bank and a friend of the defendants. The business of the Commercial Bank was taken over by the Marine National Bank of Buffalo in the early part of 1903, and the defendants continued to make deposits and do business with that bank.

In the year 1903 Johnson, who was then a bookkeeper in the Marine National Bank, was in the habit of receiving checks or money, belonging to the firm, from one of the defendants at his boarding place, usually in the evening, and some of the money he appropriated and some he delivered to the receiving teller of the bank, and credit was given for the money received by the bank and the amount of the several checks. The defendants drew checks from time to time against their account in the bank, which were paid by it. Johnson had these checks to charge against the account of the defendants, but instead of doing so charged them to the accounts of other depositors, and retained the checks. In the early part of September the books of the bank showed that the defendants had overdrawn their account to the amount of $18.98, of which they were advised.

Johnson had manipulated several accounts in the bank, and his defalcations exceeded $5,000, including about $900 which he had stolen of the money given him by the defendants to deposit in the bank. An investigation disclosed these peculations, and he surrendered to the bank the checks of the defendants which he had charged to the accounts of other depositors, and they were, in November, 1903, charged to the account of the defendants, making an overdraft of nearly $900, which the defendants refused to pay. Johnson had furnished to the bank the surety bond of the plaintiff, and it paid to the bank the full amount of the shortage caused by Johnson, and obtained from the bank an assignment of its claim against the defendants by reason of the overdraft; and this action is to collect that sum.

The defendants claim that Johnson, in receiving their money, represented the bank, instead of acting in their behalf. I think the position is untenable. The inception of the account at the Commercial Bank was because of the desire of the defendants to accommodate and aid Johnson. When the account was running in the Marine National Bank, Johnson obtained a passbook for the defendants and generally returned it to one of them when money or checks were delivered for deposit, but Johnson did not then enter the credits in the passbook. The entries were made at the bank by Johnson, or by one of the tellers. When Johnson returned the passbook to the defendants, he had

entered correctly all the credits to which the defendants were entitled, if everything had been properly delivered to the bank by him. The defendants must have known, from the course of business, that these entries were to be made at the bank, for Johnson brought the book each time from the bank with the entries made.

Money left at the bank by its depositors for deposit was delivered to the receiving teller. No part of this sum of $900, paid to Johnson by the defendants, was paid to the receiving teller, or came into the actual custody of the bank. There was no definite representation made by Johnson to the defendant that he was authorized to act as agent for the bank in receiving this money for it. The inference is rather to the contrary, for he was getting the money and checks primarily to help him in his standing with the bank. Nor is there any evidence that the Marine National Bank authorized him to receive these moneys as its agent. It was not within the compass of his duties to receive money even in the bank, much less from people on the street or at their homes. None of the officers of the bank knew anything about the course Johnson was pursuing, for the money stolen never came into its custody, and he never advised any of them that he was receiving money on behalf of the bank.

Section 5190 of the national bank act (U. S. Comp. St. 1901, p. 3486) is as follows:

"The usual business of each national banking association shall be transacted at an office or banking house located in the place specified in its organization certificate."

The authorities, so far as I have been able to find, support the proposition that where an employé of a bank receives money for deposit outside the bank, and it does not reach the bank, he is the agent of the person delivering him the money, and not of the bank. Manhattan Co. v. Lydig, 4 Johns. 377, 386, 4 Am. Dec. 280; Demarest, Treas., et al. v. Holdeman et al., 34 Ind. App. 685, 693, 73 N. E. 714; Armstrong v. Second Nat. Bank of Springfield (D. C.) 38 Fed. 883. The stockholders of the bank provided a place for the transaction of its banking business, and the duties of its officers and employés were defined by it. Its banking business was not carried on outside of the bank. Nor is there any proof that any one was authorized to accept money elsewhere than at its usual place for doing business, and there was no assent to the acceptance of the money of the defendants at the boarding place on its behalf.

I think Johnson represented the defendants, and they relied upon his honesty, and their confidence in him, unfortunately, was misplaced. I think the judgment should be affirmed.

Judgment affirmed, with costs. All concur.