**CONTINENTAL STATE BANK OF BECK-VILLE v. REED. (No. 308.)**

(Court of Civil Appeals of Texas. Waco. Feb. 18, 1926. Rehearing Denied May 20, 1926.)

**1. Principal and surety** ⚖=147(2)—**Creditor holding obligation on which deposit is made with surety to secure obligation as well as surety has, on acceptance, a contractual right to have it so applied.**

When deposit is made with surety on an obligation for express purpose of securing same as well as surety, creditor holding such obligation has, upon acceptance, a contractual right to have it so applied.

**2. Principal and surety** ⚖=147(2)—**On deposit being placed in hands of surety for purpose of indemnifying him against loss because of suretyship, if made by principal debtor, creditor's right to subject deposit to payment of his debt is one of subrogation only.**

When deposit is placed in hands of surety on an obligation solely for purpose of indemnifying surety against loss because of such suretyship, creditor's right to subject deposit to payment of debt is one of subrogation only, and deposit must have been made by principal debtor or lien given by him on some of his property to secure surety from loss.

**3. Principal and surety** ⚖=147(2)—**Creditor is not subrogated to deposit made with surety for purpose of indemnifying him against loss because of suretyship, where made by some one other than principal debtor.**

When deposit is made with surety on obligation solely for purpose of indemnifying surety against loss because of suretyship by some one other than principal debtor, the creditor is not subrogated thereto.

**4. Principal and surety** ⚖=147(2)—**Creditor is not subrogated to security given to supposed surety solely for his protection, when surety is not in fact bound.**

When deposit is made with surety for sole purpose of indemnifying him against loss because of suretyship, and supposed surety is not in fact bound, creditor is not subrogated thereto.

**5. Banks and banking** ⚖=117—**Principal and surety** ⚖=147(2) — **Bank whose name as surety was signed to bond by cashier who acted for his personal interest and without authority held not liable on bond or for deposit made by another surety for bank's protection which cashier permitted to be handled as general deposit and wholly withdrawn by checks.**

Where cashier of bank adjudged not to be liable as surety on bond in question, acting without authority and for his personal interest, accepted draft from another surety and agreed to deposit it to secure bank from liability on bond, but in fact deposited it to another's credit in whose name it was withdrawn, *held* that bank did not knowingly receive or retain benefits of draft, and hence creditor could not recover from bank on ground that he was subrogated thereto.

Appeal from District Court, Limestone County; J. R. Bell, Judge.

Action by R. L. Reed against the Continental State Bank of Beckville and others. Judgment for plaintiff, and defendant named appeals. Reversed in part and rendered.

J. F. O'Brien, of Dallas, R. K. Batten, of Eastland, and C. S. Bradley, of Groesbeck, for appellant.

Callicutt & Upchurch, of Corsicana, and A. J. Harper, of Dallas, for appellee.

GALLAGHER, C. J. Appellee, R. L. Reed, sued H. N. Harris, J. O. Galloway, and appellant, Continental State Bank of Beckville, Tex., to recover the sum of $5,000 as liquidated damages for the failure of Harris to drill an oil well according to contract. The suit was based on a bond given to secure the performance of said contract. Harris, according to the recitals of said bond, was principal therein, and Galloway and appellant were sureties. The case was tried on appellee's second amended petition. He alleged therein the execution of said contract, the execution and delivery of said bond as security for the performance of the same by Harris, and the breach of the same. He asked for judgment on the bond for the sum aforesaid. He also alleged that appellant was liable not only on account of the execution and delivery of said bond, but also because the sum of $5,000 was deposited with it "to secure the plaintiff that the contract here sued on would be performed"; that appellant accepted such deposit with such knowledge and with an agreement on its part to hold the same for that purpose, and thereby became a trustee in the holding of said fund. Appellant excepted to said petition so far as appellee sought a recovery against it as surety on said bond, on the ground of ultra vires and on the ground that it had no authority under the laws of this state to make such a contract, and that said bond was therefore as to it utterly null and void. It also pleaded a general denial and specially denied that any money was deposited with it to secure appellee in the performance of said contract, and that it had ever received any money as trustee for appellee. Appellee by supplemental petition alleged that all the parties to said bond were principals; that the bank was a mere stakeholder of said money deposited with it as alleged in his original petition.

The case was tried before a jury. Appellee proved the execution of his contract with Harris for the drilling of said oil well and the breach thereof. Said contract provided for the payment by Harris to him of the sum of $5,000 as liquidated damages if the same should be breached. The testimony showed that Harris transferred his rights under the contract to Galloway, and that Galloway

agreed to carry out the contract; that after such transfer and agreement Harris signed the bond sued on as principal, and Galloway signed the same as surety. The name of the Continental State Bank of Beckville was signed to said bond by its cashier, Nisbett. The evidence shows without contradiction that the directors of said bank never authorized nor attempted to authorize Nisbett to sign the name of the bank to said bond, and that none of them knew about his having done so until after said suit was filed. Two witnessess only testified concerning the circumstances under which said bond was signed. They were Harris and Nisbett. They both agreed that the name of appellant bank was signed to said bond by its said cashier at the request of Galloway in Fort Worth, Tex. Harris testified that at the time the bond was signed Nisbett said he wanted the bank to be safe, and that Galloway stated he would deposit $5,000 in cash with appellant bank to secure it against loss on said bond, and that he in that connection gave Nisbett a draft signed by him, the said Galloway, and payable to appellant for said sum of $5,000. Nisbett testified that he was acquainted with Galloway prior thereto, having met him at Beckville several months before; that Galloway, for the Old Colony Petroleum Company, of which he was president, was undertaking to develop some oil leases owned by him (Nisbett) near Beckville; that he was at the time he signed appellant's name to said bond in Fort Worth in response to a telephone call from Galloway about said attempted development; that Galloway asked him to sign the bond, and assured him he had arranged with the Texas Company to drill the well for one-half of the acreage, which he, Galloway, was to receive as compensation for drilling the same; that he thereupon signed appellant's name to said bond. He further testified that Galloway was at that time rated as a millionaire. He further testified that a Mr. Mackey, manager in charge of the development aforesaid at Beckville, had asked him to see Galloway about a deposit of funds in appellant bank subject to his (Mackey's) check to carry on said work; that Galloway gave him said draft for $5,000, drawn by him, the said Galloway, on the Old Colony Petroleum Company and payable to appellant bank; that the money represented by said check did not belong to Galloway; that Galloway instructed him to deposit the money received on said draft in said bank subject to check by said Mackey; that he placed said draft in a bank at Fort Worth for collection, and when notified that the same had been paid, placed the same in appellant bank to the credit of the Old Colony Petroleum Company; that this was a separate transaction from the signing of said bond; that Galloway never had an account in appellant bank and never deposited any money therein to secure appellee

against a breach of said contract or to secure anybody. This witness identified loose-leaves from the books of the bank, showing that an account was opened in the name of the Old Colony Petroleum Company about two weeks after the date of said transaction, with an initial deposit of $5,000; that said account was an active one and continued as such for a little over a year; that the first checks were charged thereto about 12 days after the account was opened; that deposits were made therein from time to time and checks charged against the same; that sometimes said account was overdrawn; that the aggregate deposits therein amounted to over $40,000; and that the entire amount had been withdrawn from the bank. There was no evidence that any officer of the bank other than its said cashier knew of any contention that the original deposit in said account or any succeeding deposit therein was not the property of the Old Colony Petroleum Company, as it purported to be.

The case was submitted to the jury on special issues and verdict answering the same duly returned. The court rendered judgment in favor of appellee against Harris, Galloway, and appellant, without distinction as to principal or surety, for the sum of $5,000. This appeal is prosecuted by the bank alone.

Appellant presents 15 points or propositions on which it claims it is entitled to a reversal of said judgment. Among the same is a contention that it was entitled to judgment in its favor on the verdict of the jury, and that the court erred in overruling its motion for such judgment. The judgment of the court is predicated upon the finding of the jury to special issue No. 2. Said issue and the answer of the jury thereto are as follows:

"Did J. O. Galloway deliver to P. R. Nisbett, cashier of the Continental State Bank of Beckville, Tex., at the time of signing of the bond as surety, a draft of five thousand dollars to guarantee said bank against loss by reason of its signing said bond as surety? Answer: Yes."

The recovery awarded by the court follows, and is based upon the following recital in said judgment:

"It appearing to the court from the verdict of the jury in answer to question No. 2 that at the time P. R. Nisbett signed the name of Continental State Bank of Beckville, Tex., to the bond as surety, J. O. Galloway deposited with said bank the sum of $5,000 to guarantee said bank against loss by reason of the signing of said bond as surety, and the said bank received said sum in trust for said purposes."

We do not think the learned trial judge intended to modify the finding of the jury on such issue, nor that he intended to make additional findings of fact and blend them with the answer of the jury thereto. We are of the opinion that he construed such finding

under the facts in evidence to constitute the proceeds of said draft which ultimately reached appellant bank, as a matter of law, a deposit therein for the purpose for which the jury found said draft was delivered to Nisbett, and such proceeds a trust fund for such purpose, and that appellee was entitled as a matter of law to recover the same. There was no evidence that the draft was delivered to Nisbett by Galloway for the purpose of securing appellee in his right to the performance of the contract as contended by him. No such issue was submitted, and there was no request for such submission.

[1-4] When a deposit is made with the surety on an obligation for the express purpose of securing the same, as well as the surety, the creditor holding such obligation has upon acceptance a contractual right to have it so applied. Magill v. Brown, 20 Tex. Civ. App. 662, 50 S. W. 143, 149, et seq. 642 (writ refused), and authorities there cited. Such right exists, we take it, whether the party in whose hands such deposit is placed is in fact bound as surety for the payment of such obligation or not. However, when a deposit is placed in the hands of a surety on an obligation solely for the purpose of indemnifying him against loss or damage on account of such suretyship such right as the creditor has to subject such deposit to the payment of his debt is one of subrogation only. Campbell Printing Press Co. v. Powell, 78 Tex. 53, 62, 63, 14 S. W. 245, 247. See L. R. A. 1916C, 1075, 1082, notes V and VI. There must in such cases be a creditor, a principal debtor, and a surety, and, in addition thereto, there must be a deposit made with the surety by the principal debtor, or a lien given by him on some of his property to secure the surety from loss on account of his suretyship. When the security is given the surety for his own protection only by some one other than the principal debtor, the creditor is not subrogated thereto. Hampton v. Phipps, 108 U. S. 260, 263, et seq., 2 S. Ct. 622, 27 L. Ed. 719. See, also, authorities cited in note in 6 Ann. Cas. 399. So in such cases, when the supposed surety is not in fact bound, the creditor is not subrogated to the security given him for his own protection alone. Campbell Printing Press Co. v. Powell, supra. We quote therefrom as follows:

"Appellees who signed the accommodation note contend, however, that they were never bound as sureties and that the mortgage made to them was solely for their indemnity, and that for these reasons appellant is not entitled to subrogation to such rights as they once may have had under the mortgage. As a principal only takes such rights through subrogation as a surety between himself and the debtor had, it would seem to follow that if the security to the sureties was given solely for the purpose of indemnifying them, if the sureties were bound, that the principal creditor would not be entitled to subrogation.

"In the case of Constant v. Matteson, 22 Ill.

546, it was held that to give a creditor the right to be substituted in the place of the surety of his debtor, the relation of debtor and creditor must exist between the creditor and surety, and that the claim on his surety must be valid, binding, and capable of being immediately enforced; but that if the relation of creditor and debtor never existed between the creditor and surety, or having existed has ceased, there cannot be any substitution of the creditor to rights of surety."

See, also, Sherrod v. Dixon, 120 N. C. 60, 26 S. E. 770, 771.

[5] In the case from which the above excerpt is quoted the supposed sureties had released the mortgage doubtless before any claim of subrogation was set up. So in this case appellant had not only paid out all the original deposit, but also all subsequent deposits in the same account, amounting in the aggregate to more than $35,000, and there is neither pleading nor proof that it had any of such deposits on hand at the time appellee's claim of subrogation was first brought to its attention. The judgment of the trial court sustaining appellant's exception to so much of appellee's petition as sought a recovery against it on the bond was an adjudication of appellant's liability as surety thereon against appellee. Appellee has not attacked such judgment by any cross-assignment of error, and the same precludes any contention that appellant was bound as a surety for the performance of said contract.

Appellant's cashier, Nisbett, according to his testimony, was the owner of certain oil leases in the neighborhood of Beckville. He was in Fort Worth for a consultation with Galloway with reference to the development of the same. According to the undisputed testimony, he received said draft in Fort Worth and not in appellant's bank. According to the finding of the jury upon which the court based his judgment, he received it in connection with his action in signing the name of appellant to said bond. According to other findings of the jury, not necessary to recite, such action was without authority from appellant's board of directors. Such being the case, he was in law the agent of Galloway or acting for him in receiving said draft and in agreeing to deposit the proceeds of the same in his bank as a special fund to secure it from liability on said bond. He never did so deposit such proceeds. He caused the same when received at said bank some two weeks later to be deposited to the credit of the Old Colony Petroleum Company, and permitted the same to be withdrawn and appropriated by said company. There is no intimation that any other officer of the bank knew of said draft or of the purpose for which it was delivered to him, nor that any other officer of the bank knew that such proceeds were not the property of the Old Colony Petroleum Company, to the credit of which Nisbett caused them to be deposited.

Because of his personal interest in securing the development of the lands covered by his oil leases at Beckville by said Galloway or the Old Colony Petroleum Company, of which Galloway was president, which interest apparently induced him to sign the name of the bank to said bond as requested by Galloway, and because of his lack of authority to do so, his knowledge of the true situation cannot in law be imputed to the bank. Such being the case, it cannot be said that appellant received the proceeds of such draft as such, nor that it knowingly received or retained the benefits thereof. Citizens' National Bank v. Good Roads Gravel Co. (Tex. Civ. App.) 236 S. W. 153, 161, 162 (writ dismissed), and authorities there cited; Fidelity & Deposit Co. v. National Bank of Commerce, 48 Tex. Civ. App. 301, 106 S. W. 782 (writ refused); Commercial National Bank v. First National Bank, 97 Tex. 536, 80 S. W. 601, 104 Am. St. Rep. 879; Interstate National Bank v. Yates Center National Bank, 245 F. 294, 157 C. C. A. 486; Fidelity & Deposit Co. v. Colby, 148 App. Div. 363, 132 N. Y. S. 20, and authorities there cited (affirmed 210 N. Y. 584, 104 N. E. 1130); 1 Morse on Banks and Banking (4th Ed.) § 168, pp. 381–383, par. (f); 7 C. J. p. 637, § 318.

None of the findings of the jury in this case authorized a judgment for appellee against this appellant. The court should have entered judgment in favor of appellant thereon. The judgment of the trial court in so far as it awards a recovery in favor of appellee against appellant is reversed, and judgment is here rendered that appellee take nothing against appellant.